OLIVER T. BEAUCHAMP, JR., POST NO. 94, AMERICAN LEGION DEPARTMENT OF MARYLAND, INC. *v.* SOMERSET COUNTY SANITARY COMMISSION

[No. 513, September Term, 1965.]

*Decided June 6, 1966.*

The cause was argued before Prescott, C. J., and Hammond, Horney, Marbury and Barnes, JJ.

*Jack Dunlap,* with whom was *Marcus J. Williams* on the brief, for appellant.

*Alexander G. Jones,* with whom were *Edgar A. Jones* and *Jones & Jones* on the brief, for appellee.

Horney, J., delivered the opinion of the Court.

The sole question presented by this appeal is whether the Somerset County Sanitary Commission (commission) abused its discretion in classifying certain property owned by the Oliver T. Beauchamp, Jr., Post No. 94 of the American Legion

Department of Maryland (post) as "small acreage" for the purpose of assessing benefits in connection with the laying of a water main and sewer in the bed of Antioch Avenue, a Princess Anne street, lying within the sanitary district administered by the commission.

When the water and sewerage system was constructed in 1962, the property in question, a 9.86 acre tract of land with one side binding on Antioch Avenue for a distance of 1580 feet, was owned by the Princess Anne Civic Association (association) and was intended to be used as a site for commercial enterprises. The commission classified the abutting portion of the tract as "small acreage" and levied an annual assessment for the year 1963 of $1169.20, based on a rate of $0.74 per front foot. The association, contending that the proper classification was "agricultural" which would have exempted the property from assessment, protested the classification as "small acreage," but the protest was disallowed and the association paid the assessment for 1963.

The post, having purchased the subject property from the association on December 30, 1963 (in order to protect a larger tract of agricultural property it owned on the opposite side of Maryland Route 388, known as West Post Office Road, on which the property in question also binds), likewise objected to the "small acreage" classification of the 9.86 acre tract. The commission, however, again rejected the claim that the property should be classified as "agricultural" and reaffirmed its original classification. The post has not paid the annual assessments for 1964 and 1965.

In November of 1965, when the parties agreed to submit the question to the circuit court for a declaratory judgment as to what the classification should be, the court affirmed the action of the commission in classifying the property in question as "small acreage" instead of "agricultural" and the post appealed.

On appeal, the post, contending that the refusal of the commission to classify the property as agricultural was erroneous, arbitrary and an abuse of discretion, argues that the property is being actively farmed and that it has been under cultivation every year, except one, for the last several years.

Code (1957), Article 43, § 657, under which the commission

acted in making the classification and levying the annual assessment, provides in pertinent part:

"For the purpose of paying the interest and principal of the bonds issued in the name of a [sanitary] district by any * * * commission * * * for the water or sewerage systems to be constructed * * * the * * * commission is hereby empowered to establish a proper and reasonable charge * * * and to fix an annual assessment * * * on all properties, improved or unimproved, binding upon a street * * * in which a water main or sewer has been built. The said annual assessment shall be made upon the front-foot basis * * *. The * * * commission for the purpose of assessing benefits shall divide all properties binding upon a street * * * in which a water pipe or sanitary sewer is to be laid, into four classes, namely: [a]gricultural, small acreage, industrial or business, and subdivision property, and the commission may subdivide each of [the] classes in such manner as it may deem to be in the public interest. * * *. The classification of and the benefit assessed against any property as made by the commission shall be final, subject only to revision at [a] hearing. The commission may change the classification [of] property from time to time as said properties change in the uses to which they are put. Said benefits shall be levied for both water supply and sewerage construction and shall be based for each class of property upon the number of front feet abutting upon the street * * *; provided * * * that no land so classified as agricultural * * * shall be assessed a front-foot benefit when said agricultural land has constructed * * * in front of it a sewer or water main, until such time as the water or sewer connection is made, * * *. Front-foot benefit charges for water supply and sewerage construction shall be as nearly uniform as is reasonable and practical for each class or subclass of property throughout each sanitary district for any one year * * *." [1]

1. We note that Chapter 674 of the Laws of 1966, effective June

As is apparent, the purpose of the statute was to impose a special assessement on all properties that had been specially benefited by the installation of the water mains and sewers. That such assessment is valid so long as the properties against which the assessment is levied will receive a special benefit from the public improvement is well established. See *Leonardo v. Board of County Commissioners of St. Mary's County,* 214 Md. 287, 134 A. 2d 284 (1957), *cert. den.* 355 U. S. 906 (1957); *Md. & Penna. R. R. v. Nice,* 185 Md. 429, 45 A. 2d 109 (1945); *Leser v. Wagner,* 120 Md. 671, 87 Atl. 1040 (1913), *aff'd.* 239 U. S. 207 (1915). But see *Harlan v. Town of Bel Air,* 178 Md. 260, 13 A. 2d 370 (1940), where it was said that the property against which an assessment is levied must be benefited by the improvement to an extent substantially equal to the amount of the assessment.

Since different types of property may be benefited to different extents by an improvement, such as a water and sewerage system, it is evident that property which is rural in nature will ordinarily benefit less from such improvements than will urban property and for that reason the apportionment of the assessment should be different. Obviously the legislature recognized this fact when, in enacting § 657 of Article 43, it provided the means of apportioning assessments in such manner as would make the assessments substantially equal to the benefit to be derived from the improvement. Not only is it provided that the properties affected are to be classed according to the general type of benefit each property will derive from the improvement, but provision is made for a uniform front-foot rate to be applied to all properties in the same class. This was well within the legislative discretion. In addition, it is further evident that the enactment was intended to avoid the constitutional problem that might otherwise have been engendered had the front-foot assessment been applied indiscriminately to all types of property without making a distinction as to the type of benefits accruing thereto.

---

1, 1966, added a new section (657A) to Article 43, providing for an exemption in Somerset County of the property of any incorporated American Legion Post from the levy of any taxes, charges or assessments of whatever kind against the property by the Somerset County Sanitary District.

There was evidence before the commission when it originally classified the property in question as small acreage and when it subsequently refused to classify it as agricultural that there was a slag pile at one end of the property; that there was a baseball diamond in the central portion; that the remaining part was a small narrow irregularly shaped strip of land; that the entire tract was zoned residential by the town of Princess Anne; and that the area across Antioch Avenue from the property was entirely residential. But, other than the fact that what remained of the 9.86 acre tract, for which $4000 had been paid, was rented for agricultural use for less than $100 a year, there was no evidence, one way or the other, that the amount of the special assessment may have exceeded the value of the benefits received. Nor, although the properties classified as small acreage and subdivisions were assessed at the same rate, was it shown that the rate for small acreage property should be different from subdivision property or that the property in question received less benefits than subdivision property or other small acreage property. Under these facts and circumstances we cannot say that the commission abused its discretion in classing the subject property as "small acreage" rather than "agricultural."

The post's further argument that the present assessment will force the conversion of its agricultural land to non-agricultural uses, which result, it asserts, is contrary to the legislative intent and the principal enunciated by this Court in *Supervisor of Assessments of Montgomery County v. Alsop*, 232 Md. 188, 192 A. 2d 484 (1963), where it was said that land devoted to agricultural use should be assessed on the basis of such use, overlooks the fact that the *Alsop* case had to do with a general taxing statute whereas the statute involved in the instant case concerns the imposition of a special assessment for a public improvement. As early as 1878 it was said in *Brooks v. Baltimore*, 48 Md. 265, 268, that "taxes and special assessments for benefits stand upon widely different grounds, and the distinction between them has been so generally recognized that it must now be considered as settled."

*Judgment affirmed; appellant to pay the costs.*