## 18546

Charles E. NEWTON, Betty R. Pregnall, C. F. Myers, Jr., Rosina Marie Kennerty, Joan Snowden Kennerty and Joseph K. Harris, taxpayers and property owners of St. Andrews Parish, Charleston County, South Carolina, Individually and representing all other persons similarly situate, Appellants, v. J. J. HANLON, Chairman, Henry A. Kennedy, Dr. C. T. Hamrick, Jr., W. C. Kennerty and Simpson M. Parker, constituting the St. Andrews Public Service Commission, and Daniel R. McLeod, Attorney General of the State of South Carolina, Respondents.

(149 S. E. (2d) 606)

*Messrs. Philip Garfinkle, Stanley Waldman, Nathaniel L. Barnwell, Jack P. Brickman, Harvey Spar* and *Jack White,* all of Charleston, *for Appellants,*

*Messrs. William Ackerman* and *Sinkler, Gibbs & Simons,* of Charleston, and *Daniel R. McLeod, Attorney General,* of Columbia, *for Respondents,*

August 2, 1966.

LIONEL K. LEGGE, Acting Associate Justice.

Act No. 535 of 1965 (54 Stat. at L. 1064) authorizes St. Andrews Public Service Commission, the governing body of St. Andrews Public Service District in Charleston

County, to issue $5,000,000.00 of general obligation bonds of the district for the purpose of constructing improvements to and extensions of the district's present sewer system, provided the Commission agree that it will, to such extent as it shall deem fair and equitable, impose assessments against properties abutting on sewer laterals constructed from the proceeds of the bonds so issued, in aid of debt service of such bonds.

Act No. 397 of 1965 (54 Stat. at L. 718) is a general statute purporting to empower all special purpose districts exercising power to construct and operate sewer facilities: (a) to establish and enforce a schedule of charges for sewage collection service; (b) to contract with any public or private agency operating a water system for the collection of such charges; (c) to require all property to which sewer service is available to connect to the district's sewage collection facilities; (d) to make regulations with respect to the discharge of sewage and the use of privies, septic tanks and other types of sewage facilities; (e) to impose front foot assessments against properties abutting on sewage collection laterals; and (f) to make sewer service charges a lien against the property served.

The Commission proposes to issue $5,000,000.00 of bonds as authorized by Act No. 535, and to establish pursuant to the authority vested in it under Act No. 397 regulations to provide, by front foot assessments and otherwise, for debt service of said bonds and for maintenance and operation of the district's improved and extended sewer system.

In this action the plaintiffs, representing several categories of property owners in the district: (1) question the constitutionality of Act No. 397 insofar as it purports to authorize frontage assessments; and (2) seek to enjoin, as discriminatory, enforcement of the Commission's regulations before referred to. The Commission having answered, denying the charges of unconstitutionality and discrimina-

tion, and there being no factual dispute, the cause was heard on the pleadings before the Honorable Clarence E. Singletary, Judge of the Ninth Judicial Circuit, from whose decree holding the questioned Act constitutional and the challenged regulations valid the plaintiffs have appealed.

St. Andrews Public Service District is a body corporate and politic operating under authority of Act No. 443 of 1949 (46 Stat. at L. 1015) that created it, and amendments thereto. Among the powers thus vested in it is that of acquiring, constructing, maintaining and operating within its area sewer systems, including extensions of the system existing at the time of its creation. From time to time the district has acquired or constructed sewage collection and treatment facilities. For the most part the present facilities were constructed from the proceeds of sale of general obligation bonds, for the retirement of which an *ad valorem* tax has been, and is, assessed against all taxable properties within the district, including those of each of the appellants.

The district's present sewer collection lines serve only a small portion of its area and about twenty-five per cent of its residents. The Commission, after investigation, has determined that the public health of the district requires that its existing sewer system be improved and extended. Upon the recommendation of its engineers it now proposes to extend the sewer lines so that they will serve practically all residents of the district, and to construct sewage treatment and disposal plants so that raw sewage will no longer be dumped into the waters of Charleston harbor. The estimated cost of these extensions and improvements is approximately $5,000,000.00, exclusive of possible Federal aid.

The Commission's present plan for raising revenue for debt service of the proposed bonds and for maintenance and operation of the improved and extended system is as follows:

1. A district wide *ad valorem* tax levy of five mills;

2. A sewer service charge of Two Dollars ($2.00) per month against all properties making use of the existing or extended system; and

3. An assessment of Four Dollars ($4.00) per front foot, payable over a ten-year period, against properties abutting on the proposed sewer collection laterals.

The proceeds of the *ad valorem* levy are to be applied to debt service of bonds issued for construction and installation of trunk lines and treatment and disposal facilities. The proceeds of the frontage assessments are to be applied to debt service of bonds issued for construction and installation of the sewer collection laterals on which the assessed properties abut. The proceeds of the service charge will be used for maintenance and operation, and any surplus will be applied to debt service of outstanding bonds. The *ad valorem* levy, the frontage assessments, and the service charge will be liens against the properties to which they are applicable respectively.

The appellant Newton owns improved property now served by the district's existing sewage collection system. His property, therefore, will not be subject to the proposed front foot assessments but will be served by the sewage treatment and disposal facilities to be constructed from a portion of the proceeds of the bond issue.

The property of the appellant Pregnall is not now served by the district's existing sewage collection facilities. It will be on one of the proposed sewage collection lines; and she will be required to connect with it although her property is now adequately served by a septic tank which she has installed and which meets the requirements of the State and County health departments.

The appellant Myers owns undeveloped property not now served by any sewage collection facility, but which will abut on one of the proposed sewage collection lines. He has no plans to develop or build on this property at this time; and it is admitted for the purposes of this action that said prop-

erty will come within the exemption provided in the Commission's proposed regulations for properties not being devoted to commercial or residential purposes or platted or otherwise developed at the time of the proposed frontage assessment.

The appellant Harris owns an unimproved vacant lot in a subdivision. It will abut on a proposed sewage collection line. He does not plan to build on this property in the foreseeable future; but since it has been platted as part of a residential subdivision it is admitted for the purposes of this action that it will not qualify for the exemption before mentioned.

The appellant Rosina Marie Kennerty owns improved property which is adequately served by a properly inttalled and operating septic tank, and which will not be on any proposed sewage collection line.

The appellant Joan Snowden Kennerty likewise owns improved property which will not be on any proposed sewage collection line, and which is presently served by a septic tank; but it is admitted that due to the nature of the soil this septic tank does not operate effectively, and that it constitutes a health menace.

Appellants contend that the provision in Act No. 397 authorizing the imposition of frontage assessments is arbitrary, constitutes a taking of their property without just compensation, and deprives them of their rights under the due process and equal protection clauses of the State and Federal Constitutions.

It has long been recognized that the legislature has inherent power to authorize assessment of property within a special taxing district for the purpose of defraying in whole or in part the cost of constructing local improvements. *Evans v. Beattie,* 137 S. C. 496, 135 S. E. 538; *Rutledge v. Greater Greenville Sewer District,* 139 S. C. 188, 137 S. E. 597; *Distin v. Bolding,* 240 S. C. 545,

126 S. E. (2d) 649. In *Evans* and *Rutledge* the challenged assessment was in the form of an *ad valorem* tax; in *Distin* it was a sewer service charge in addition to the *ad valorem* assessment. In our opinion the frontage assessment here challenged involves no different principle and presents no violation of the constitutional provisions which the appellants invoke. For, as pointed out in the circuit court's decree, the particular basis to be employed in apportioning a special assessment is a matter for determination by the legislature and is immune from attack on constitutional grounds unless it is palpably arbitrary. The general rule, as stated in 48 Am. Jur., Special or Local Assessments, Section 67, page 622, is that "the front footage of property on a street on or in which a public improvement is constructed may be made the basis of apportionment of a special or local assessment to finance such improvement without constituting a taking of property for a public use without compensation, a deprivation of property without due process of law, or in any other respect a violation of the Fourteenth Amendment or of any other part of the Federal Constitution."

"Apportionment according to front footage unquestionably results in many situations in substantial or at least rough approximation to apportionment according to special benefit, and constitutes as close an approximation thereto as could any other mode of apportionment, and such a degree of distribution of the burden according to benefit is all that generally is deemed to be constitutionally requisite to the validity of an apportionment of a special or local assessment." 48 Am. Jur., Special or Local Assessments, Section 68, page 624.

Act No. 397 expressly limits the frontage assessment to the cost of construction of sewer laterals and extensions thereof. It requires that upon completion of the construction of such laterals and their extensions the Commission "shall compute and ascertain the total cost thereof and shall thereupon make an assessment of such total

cost or so much thereof as it deems appropriate." It requires that the assessment be made upon the lots or parcels of land abutting directly on such laterals, according to the extent of the respective frontage thereon, by an equal rate per foot of such frontage. It is thus apparent that the front foot assessments bear a direct relationship to the benefit conferred upon each property assessed. From the record before us it does not appear that they will, in respect to any particular property owner, be so disproportionate to benefits as to violate the constitutional requirements of due process or of equal protection. We note also that the Act and the Commission's proposed regulations accord to each property owner an opportunity to be heard before the Commission prior to the imposition of the frontage assessment against his property, empower the Commission, following such hearing, to make appropriate corrections in the assessment roll, and give to the individual property owner the right of appeal to the circuit court.

Appellants contend that the Act's provision for notice of the frontage assessments to the property owners concerned does not satisfy the requirements of due process. The Act provides: that immediately after completion of the assessment roll the Commission shall cause one copy of it to be deposited in the Commission's office for inspection by interested parties, and shall publish at least once in a newspaper of general circulation within the district a notice of the completion of the assessment roll setting forth a general description of the improvements and the time fixed for a meeting of the Commission to hear objections in respect of such assessments, the meeting to be not less than ten days from the date of such publication; and that as soon as practicable after the completion of the assessment roll and prior to the publication of the notice above mentioned the Commission shall mail to the owner of each lot against which a frontage assessment is to be levied, at his address, if any, appearing on the records of the county treasurer, a notice stating, *inter alia,* the nature of the improvement, its

total cost, the amount of the particular assessment and the frontage upon which it is based, and the time and place fixed for the Commission's meeting to hear objections. Appellants argue that this requires that the notice be mailed to whatever address may appear on the county treasurer's books, even though such address be incorrect or incomplete, and makes no provision for notice in the event that no address should appear on those books. Such interpretation is, in our opinion, too rigid; a more reasonable one would seem to be that for the purpose of mailing the notice the Commission is to resort to the county treasurer's records of the taxpayers' addresses, so far as such records are available and useful. But even though the language of the Act be viewed as inadequately providing for notice, such deficiency may be, and in our opinion has been, remedied by the Commission's proposed regulation, which provides that "in the event no address appears on the records of the County Treasurer for a particular property owner, or in the event the Commission has reason to believe that such address is inaccurate, the Commission shall make every reasonable effort to determine the correct address of such property owner to the end that he shall receive written notice of the assessment to be made against his property if it is possible with reasonable efforts to determine his location and address." Thus implemented, the provisions of the Act regarding mailing of notice would appear to meet fully the requirements of due process. *Hancock v. City of Muskogee,* 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081. Cf. *Bradley v. City Council of City of Greenville,* 212 S. C. 389, 46 S. E. (2d) 291.

We find no merit in the suggestion that the General Assembly may not lawfully empower the district to impose frontage assessments and sewer service charges as well as an *ad valorem* tax for the purpose of defraying the cost of constructing the improvements to and extension of its sewer system. Appellants argue that since in *Rutledge v. Greater Greenville Sewer District, supra, a*

district-wide *ad valorem* tax was upheld as a reasonable method of distributing the burden of such construction, that method must now be held to be exclusive. No such conclusion is required or warranted from that decision. We note incidentally that the Act under challenge there (34 Stat. at L. 1537) limited the Commission's expenditures to the construction of trunk lines and disposal plants and required that the cost of construction of laterals be borne by the owners of properties directly served by such laterals,—an arrangement not unlike that now under consideration.

As before noted, the cost of construction, maintenance and operation of the district's enlarged sewer system is to be financed as follows:

1. Construction of trunk lines and treatment and disposal plants, to be paid for by the proceeds of the district-wide *ad valorem* tax;

2. Construction of sewage collection laterals, to be paid for by frontage assessment of abutting properties, supplemented by surplus of sewer service charges over cost of maintenance and operation; and

3. Maintenance and operation, to be paid for by the monthly service charge.

We perceive no valid ground of objection to this method of distributing the burden of the proposed improvements. It would appear more equitable that a district-wide assessment that would impose upon all properties within the district, including those to which the sewer collection facilities will not be available, the cost of constructing not only the trunk lines and treatment and disposal plants, but also the sewer collection laterals. Cf. *Distin v. Bolding, supra,* where two separate assessments, one a sewer service charge and the other a district-wide *ad valorem* levy, were held to be proper.

Assessments for local improvements must be fairly and justly apportioned among those charged with their payment. A method of apportionment, whether by statute or by regulation, that is manifestly arbitrary or

discriminatory does not fulfill the constitutional requirements of due process and equal protection. But there never has been and probably never can be a perfectly equitable distribution of the tax burden; and statutes or regulations for the apportionment of assessments for local improvements are not to be stricken down merely because they fail to attain the unattainable. All that is required of them by constitutional law is that they apportion the burden of assessments with approximate equality, upon a reasonable basis of classification, and with due regard to the benefits to the individual property owners and the requirements of the public health, safety or welfare. In the light of these principles and of the fact that considerations of individual convenience must often yield to the paramount requirements of the public health, the complaints of the several appellants here with regard to alleged discrimination require no extended discussion.

Act No. 397 exempts from frontage assessments ▇▇▇▇ property not in commercial or residential use and unimproved property not platted or otherwise developed as part of a subdivision devoted to residential or commercial purposes. Such exemption, which by the terms of the Act will be moved if and when the exempted property is converted to commercial or residential use or platted or otherwise developed, is in our opinion based upon a reasonable classification and therefore within the legislative power. 48 Am. Jur., Special or Local Assessments, Section 78, page 635. Nor have the appellants any standing to question it, there being no showing that any right of theirs has been invaded or affected thereby. *Hampton v. Dodson,* 240 S. C. 532, 126 S. E. (2d) 564. For like reasons the provision in the Act that no individual parcel of land may be assessed on the basis of more than two hundred fifty feet of frontage is unobjectionable.

As before noted, the Act empowers the Commission ▇▇▇▇ to provide for assessment of lots abutting directly on the sewage collection laterals according to the extent of the respective frontage thereon, by an equal rate per foot

of such frontage. It further provides that "the Commission may, in its discretion, provide, in the instance of corner lots, for an assessment deemed to be equitable." In its proposed regulations, the Commission declares that "in the case of corner lots, the front foot assessment will be based on the longer of the boundary lines abutting onto such sewage collection lines." Since such lots abut on two streets and therefore have "frontage" on both, they may be assessed for sewers in both streets. 14 McQuillin, Municipal Corporations, Section 38.68, page 192; 48 Am. Jur., Special or Local Assessments, Section 74, page 630. But assessment on the basis of such double frontage would appear to be inequitable and disproportionate to benefits received, except in instances, probably rare in suburban communities such as the district here, where the property is actually served by the sewer facilities installed in both streets. The Commission's determination to limit the assessment against corner lots to the longer of the two frontages was within its discretionary power and is therefore not subject to review unless shown to be arbitrary or obviously unreasonable. No such showing is made here. Likewise the Commission can properly assess, in the district-wide tax, the cost of sewer lines at intersections, and on which no property abuts.

There is no merit in the contention that the owner of a vacant lot who does not plan to build on it should not be subjected to the frontage assessment for a sewage collection line in the street upon which his lot abuts. It cannot be doubted that the construction of such facilities will enhance the value of the lot; and we do not think it mere speculation to assume that a building will be erected thereon within the foreseeable future although the owner has no present plans in that regard. It is not essential that the benefits of a local improvement be direct or immediate. *Evans v. Beattie, supra.*

In the construction and operation of the improvements and extensions of the district's sewer system, the Commission acts, under its police power, for the

protection of the public health. In the exercise of that power it may require one whose property is adequately served by a septic tank to connect with the extended system. *Ruggles v. Padgett,* 240 S. C. 494, 126 S. E. (2d) 553.

The property of one of the appellants will not be on any line included in the proposed sewer facilities. It is inadequately served by a septic tank because of the nature of the soil. She wishes to have the Commission required to include this property within the proposed sewer system, and argues that this should be done because she will have to pay the *ad valorem* assessment for its construction. But her liability for the assessment is not dependent upon the availability of the sewer service to her property. For although extension of the system to serve every piece of property within the district may not be feasible at this time, its purpose is to safeguard the public health not only within the area of the properties directly served, but throughout the entire district; and its construction and operation will therefore benefit all properties within the district, including those which cannot presently connect with it. *Mills Mill v. Hawkins,* 232 S. C. 515, 103 S. E. (2d) 14. For like reason there is no merit in the contention of the appellant Charles E. Newton that he should not be required to contribute, by *ad valorem* assessment and by payment of the sewer service charge, to the cost of construction, maintenance and operation of the extended system.

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, JJ., concur.