684 P.2d 291

In the Matter of the Appeal of J. Howard WARD and Melissa Ann Ward, Husband and Wife, and Pauline R. Patterson, individually and Pauline R. Patterson and Scott Patterson, as Trustees of the Trust created by the Will of Dale Patterson, deceased from the Ada County Highway District Assessment levied in Project No. 2116.2, Apple Street Extension Right-of-Way, Local Improvement District No. 81–8, Appellants,

and

Pauline R. Patterson individually and Pauline R. Patterson and Scott Patterson, as Trustees of the Trust Created by the Will of Dale Patterson, deceased, Appellants-Appellants,

v.

ADA COUNTY HIGHWAY DISTRICT, Respondent-Respondent.

No. 15018.

Supreme Court of Idaho.

June 29, 1984.

E. Don Copple, Boise, for appellants.

Alfred C. Hagan, Boise, for respondent-respondent.

SHEPARD, Justice.

This is an appeal from a judgment in favor of the Ada County Highway District against the trustees of the Dale Patterson Trust, in which the trial court affirmed a local improvement district (LID) assessment against the Patterson property. We affirm.

Pursuant to I.C. § 50–1701, *et seq.*, a local improvement district was proposed for the purpose of extending Park Center Boulevard and Apple Street. The Apple Street extension contained five lanes north and south, connecting the Park Center extension with East Boise Avenue. Hearings were held and the project approved, with assessments to be made against properties which abutted the street on a "front foot method," *i.e.*, each property abutting the street would be assessed in the proportion that its street frontage bore to the length of the entire project. The Pattersons were thus assessed $52,121.38.

No question is presented on this appeal as to any procedural requirement regarding the formation of the local improvement district or the project for which it was formed. Rather, the Pattersons brought suit in the district court, challenging the assessment on their property as being too high.[1] The Patterson property is a seventeen and one-half acre tract of land zoned

light density residential, but at that time it was used only for pasture. Testimony by one of Patterson's witnesses indicated that, prior to the street improvement, the Patterson land had a value in excess of $500,000. There is no contention that the street improvement diminished that value. There was conflicting testimony regarding the benefit the Patterson property received from the construction of the project. The trial court found that, prior to the construction of the property, there was no access to the easterly portion of the Patterson property, that the access from the Patterson property to Boise Avenue would be difficult because of a substantial grade variation, and that the project "greatly facilitates the desirability and adaptability of development of the property to a residential medium density use."[2] He found that, to develop the Patterson property, the owners would be required to construct Apple Street at its present location as a condition of such development and that that cost to the owners would at least equal or exceed the LID assessment against the Patterson property. He found that the Patterson property had "the benefit of an accomplished improvement with further benefits to the property owner occasioned by the availability of a low interest rate and the choice of paying for the improvements over a ten year period."

The essence of appellant Patterson's position on this appeal is that the properties abutting upon the project should not have been assessed on the basis of the front foot method, but rather should have been calculated by a method which allocates the cost of a project in proportion to the amount of benefit the project confers on each abutting property. In that regard, appellant Patterson points to a finding of the trial court that it is "possible" that the Allen

---

1. Ward, who owned a small piece of residential property also abutting the street, joined in the action challenging his assessment. When the testimony at trial indicated there would be no benefit to the Ward property from the LID project, that assessment was annulled. The Ward property is not an issue on this appeal.

2. Uncontradicted testimony indicated the Patterson property was best suited to low density, not medium density residential use. This inaccuracy, however, does not alter the outcome of this appeal.

property[3] will receive a benefit "which could amount to $1.6 million in the future as a possible benefit to that property should that construction be consummated." Appellant Patterson argues, therefore, that, although the Patterson property will receive a benefit equal to or in excess of its assessment, it is somehow being treated unfairly, since the Allen property is receiving a benefit far in excess of its assessment. We note that there is no evidence of the amount of the assessment on the Allen property, however, clearly, it is substantially more than the assessment on the Patterson property, since the Allen property has a great deal more street frontage. Thus, the question presented on this appeal is whether, under the circumstances of the instant case, the commissioners of the Ada County Highway District erred in determining that the local improvement district project should be financed by assessment of the abutting properties on a front foot basis, which error is alleged to be compounded by the district court's affirmation of the commissioners' decision.

I.C. §§ 50–1701—50–1770 provide the statutory framework for local improvement districts and the creation, financing and construction of projects by a district. I.C. § 50–1707 requires notice to be given of intention "to create the district, to make improvements and to levy assessments to pay all or a part thereof." Subdivision (c) of § 50–1707 requires, in pertinent part:

"A statement that the costs and expenses of the improvements will be assessed ... upon lots and lands benefited by such improvements and included in the district to be created according to a *front foot method, or a square foot method, or a combination thereof, or in proportion to the benefits derived to such property by said improvements,* and the council shall state the method so determined in said notice." (Emphasis supplied.)

▓ Hence, it is clear that any lands assessed within the proposed district must be "benefited" by such improvements. In determining the allocation of costs by assessment upon any land so benefited, any one of the four methods of assessment may be chosen. The method chosen could be subject to variation, dependent upon a determination "that the benefits to be derived by certain lots or parcels of property warrant such variations." I.C. § 50–1710.

I.C. § 50–1712 requires the preparation of an engineer's report showing the amount chargeable to each property "according to the method of assessment originally contemplated ... subject to any variations therefrom as a result of the engineer's recommendation that benefits to be received by any lot or parcel warrant such a variation from the method chosen."

Prior to the final confirmation of the assessment roll, I.C. § 50–1713 requires a hearing, upon notice thereof, to determine all objections to "the correctness of the assessment, and the amount levied on the particular lot or parcel in relation to the benefits accruing thereon and in relation to the proper proportionate share of the total cost of the improvements in the project. I.C. § 50–1714 provides that, *in the discretion of the authorized entity,* any assessment may be revised or set aside. Thereafter, I.C. § 50–1715 requires the passage of an ordinance confirming the assessment roll, "which ordinance shall contain a finding that each lot or parcel of land is benefited to the amount of assessment levied thereon ..."

The trial court aptly described the statutory scheme:

"[T]he statutory scheme permits assessments to be calculated solely on the front-foot method without specific apportionment to the particularized benefits derived by such property as a result of the improvement. It is only later, prior to actual confirmation of the assessment roll, that the council may take a second look at the assessment method and amount levied in relation to the benefits accruing to the particular parcel and in

---

**3.** The Allen property here at issue fronts on Apple Street. It contains substantially more front footage and has a larger area than the Patterson property.

relation to the proper proportionate share of the total cost of the improvements in the project. In this regard, the council's function is somewhat similar to a board of equalization with the power to equalize (vary) assessments in relation to benefits conferred and correct any obvious inequities that appear therefrom or otherwise order that the assessment be made *de novo.*"

As noted above, no error is asserted as failure to conform to the statutory scheme. Rather, the record indicates that the Pattersons did not become involved in the assessment procedure until after the assessment against their property had been finally confirmed, at which point they appealed to the district court pursuant to I.C. § 50–1718, which allows such appeals to "be tried in said court as in the case of equitable causes," which appeal was conducted as a trial de novo. *Amsbary v. City of Twin Falls,* 34 Idaho 313, 200 P. 723 (1921).

■ Hence, as above stated, we are faced with the question of whether, under the instant circumstances, the trial court, sitting as an equity court, erred in its determination that the front foot method could be used in determining the assessment on the Patterson property or whether, as argued by the Pattersons, that front foot method was required to be modified by the district court to consider benefits conferred by the project on the *Allen property.* There is no question but what the Patterson property was benefited by the project. The trial court found that the Patterson property was benefited by an amount equal to or in excess of the assessment against the Patterson property, and that finding, being based on substantial, albeit conflicting, evidence, is affirmed.

Appellants Pattersons argue that *Amsbary v. City of Twin Falls, supra,* requires that consideration be given in the instant case to the amount of benefits accruing to other properties within the LID. We disagree. The statute under consideration in *Amsbary* provided that the assessment of the expense of a project should be assessed upon lands included in the improvement district "in proportion to the number of feet of such lands and lots fronting thereon or included in the improvement district, *and* in proportion to the benefits derived to such property ..." (Emphasis supplied). The statute in *Amsbary* differs from the statute under construction here, since in the instant case the authorized entity may adopt any one of four methods of assessment, and the entity is constrained only by the requirement that each property assessed be benefited by the project. I.C. § 50–1707. It is true that the authorized entity at a later time may, in its discretion, revise any assessment by a consideration of benefits accruing to properties within the project. In the instant case, the authority did not make any such revisions to the assessment against the Patterson property and, insofar as the record here indicates, the Pattersons made no such request at that level for a revision of their assessment.

Similarly, appellants Pattersons cite *Blackwell v. Village of Coeur d'Alene,* 13 Idaho 357, 90 P. 353 (1907). In *Blackwell,* the court specifically noted that the statute under consideration there provided for the assessment based on the front foot method "and in proportion to the benefits derived by such sewage improvement." The statute under consideration in the instant case clearly differs from that in *Blackwell.* Likewise, in *McGilvery v. City of Lewiston,* 13 Idaho 338, 90 P. 348 (1907), Lewiston, as a special charter city, was authorized to levy assessments "in proportion to the benefits of said lots and parcels of land respectively." Thus, the authorizing legislation in *McGilvery* required the application of only the benefits-derived method. As such, it also is inapposite to the case at bar.

The front foot method of assessing properties has been accepted in several jurisdictions. *See, e.g., O.T. Beauchamp, Jr., Post 94 v. Somerset Co. San. Com'n,* 243 Md. 98, 220 A.2d 135 (1966); *Fowler v. City of Santa Fe,* 72 N.M. 60, 380 P.2d 511 (1963); *Fisher v. City of Minot,* 188 N.W.2d 745

(N.D.1971); *Newton v. Hanlon,* 248 S.C. 251, 149 S.E.2d 606 (1966). Colorado has applied a similar rule, finding that the "front-foot, square-foot" method of assessment is proper, so long as the benefit conferred is approximately equal to the assessment. *Orchard Court Development Co. v. City of Boulder,* 182 Colo. 361, 513 P.2d 199 (1973). Arizona has stated that, but for a statute expressly providing a different method, the frontage method of assessment would be valid. *Weitz v. Davis,* 102 Ariz. 40, 424 P.2d 168 (1967). The statute construed in *Weitz* was quite similar to Idaho's old assessment district statute under which *Amsbary* was decided. Writing for a unanimous Court, Oliver Wendell Holmes stated that, when it does not appear that the cost to an assessed property owner exceeds the benefit, "[t]he front-foot rule has been sanctioned for the cost of paving a street." *Gast Realty & Investment Co. v. Schneider Granite Co.,* 240 U.S. 55, 58, 36 S.Ct. 254, 255, 60 L.Ed. 523 (1916); *see also Webster v. City of Fargo,* 181 U.S. 394, 395, 21 S.Ct. 623, 624, 45 L.Ed. 912 (1900).

We again note that in the instant case the district court on appeal sits as a court of equity and hears the matter de novo. The statute authorizes the entity to utilize any one of four methods of assessment and to thereafter review, in its discretion, any benefits incurred. There is no indication in the record, and we will not presume, that the entity failed to review the assessments in view of the benefits conferred. On appeal, the district court has the same authority to review and revise the assessment of appellant Patterson.

We note that appellants Pattersons' theory of this appeal is ultimately bottomed on the contention that someone else's property should bear a higher proportionate share of the cost of the project. The assessment of the Allen parcel was presumably not contested and no appeal from that assessment was taken to the district court. The owners of the Allen parcel were not parties to nor present at the district court trial concerning the Patterson property, nor are the Allen property owners before this Court on this appeal. Presumably, therefore, the assessment of the Allen property is final and conclusive.

We note further the cautious language of the district court of the "possible" benefit to the Allen property, "with the possibility of a major shopping center being constructed in the future as a possible benefit to that property should that construction be consummated."

In short, we hold that the commissioners of the Ada County Highway District did not err in determining that the assessments to be made on the properties within the LID should be calculated on the front foot method, and further that the said commissioners did not err in failing to modify the assessment so imposed (evidently never having been asked to do so) by consideration of the benefits conferred by the project on the properties in the district. Further, we hold that the district court, sitting in equity, did not err in finding that the benefits conferred on the Patterson property by the construction of the project were equal to or in excess of the amount of the assessment against the Patterson property. The district court did not err in exercising its equitable powers in declining to revise or reduce the assessment against the Patterson property by considering the possible future benefits which the project might confer upon the Allen property.

The decision of the district court is affirmed. Costs to respondents.

DONALDSON, C.J., BAKES and HUNTLEY, JJ., and McFADDEN, J. pro tem., concur.