61 P.3d 575

Burton C. WOOD, a married man dealing with his sole and separate property, Doug Marsh and Lorna Marsh, husband and wife, Robert Curry, Bruce Sweeney Limited Partnership, and Seubert Excavators, Inc., a corporation, Plaintiffs–Appellants,

v.

CITY OF LEWISTON, Idaho, a municipal corporation, Defendant–Respondent.

No. 26591.

Supreme Court of Idaho, Lewiston, October, 2002, Term.

Dec. 27, 2002.

Radakovich Law Office, Lewiston, for appellants. Danny J. Radakovich argued.

Don L. Roberts, City Attorney for the City of Lewiston, for respondent.

TROUT, Chief Justice.

Property owners within a Local Improvement District (LID) in Lewiston appeal from a district court order affirming the City Council's creation of the LID and modifying the Final Assessment Roll. This Court reverses in part and remands the case to the district court with instructions to (1) order appellant, the Sweeney Limited Partnership, to remain in the case and (2) remand the case to the City for reassessment.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The City Council of the City of Lewiston (City Council) created LID 97–2, the "Red Rock LID," by ordinance adopted February 23, 1998, and approved the Final Assessment Roll by ordinance adopted September 13, 1999. The Final Assessment Roll identifies fourteen parcels to be assessed $25,281.00 each in order to finance the construction of a water main system.

Appellants are five landowners who together own eight of the parcels assessed. These landowners include Burton C. Wood (Wood), Doug and Lorna Marsh (the Marshes), Robert Curry (Curry), Seubert Excavators, and the Bruce Sweeney Limited Partnership (the Sweeney Partnership). Wood owns two adjacent parcels, one 1.2 acres and the other 1.7 acres, on which two businesses operate; the Marshes own a single parcel of .61 acres on which they operate a gas station and convenience store; Curry owns two adjacent parcels, one 2.1 acres and the other 10

acres, on which he operates a utility construction company; Seubert Excavators owns a single parcel of 6.7 acres which was formerly used as a rock quarry; and the Sweeney Partnership owns two parcels, one 1.2 acres and the other .87 acres.

The City of Lewiston annexed the Red Rock area in the late 1960's or early 1970's. Prior to the installation of the water system at issue, this area received water from two sources: the privately owned Red Rock Land and Water system provided domestic water fed by a spring and the Hatwai Irrigation District pumped water from the Clearwater River for purposes of irrigation and fire protection.

Questions regarding the sufficiency of the two Red Rock water sources date back to the 1980's. At that time, the Red Rock Land and Water system experienced insufficient flows prompting the City to make an emergency hook-up of the Red Rock Land and Water system with the City system. Subsequently, in 1993 and 1994, Bruce Sweeney, of the appellant Sweeney Partnership, asked the City to consider ways to improve the water system in the Red Rock area. Sweeney was concerned the existing water was not adequate to provide sufficient fire protection and precluded expansion of a business operating on his land. Moreover, in 1993 the City learned the owner of the Red Rock Land and Water system wanted to cease business operations.

In response to these concerns, the City began to consider ways to address the Red Rock area's water problems. In 1995, the City paid the engineering firm of Thomas, Dean & Hoskins to complete a hydraulic study for the area, and, sometime prior to 1996, the City became interested in providing a new system of domestic water and fire protection to the Red Rock area.

In the process of evaluating its options, the City considered a number of water system designs for the area and completed at least two applications for grant funding from the Idaho Community Development Block Grant program. A successful 1997 application became the blueprint for the new water system, both in terms of project design as well as proposed financing. In terms of design, the City's application described a water main system consisting of 1.5 miles of looped ten and twelve inch main system providing 3,250 gallons of water per minute. In terms of financing, the City sought $450,000 in grant money and described a contribution of $367,935 from a future LID.

On December 9, 1997, the City wrote letters to Red Rock area property owners describing the proposed water system improvements and assessment financing and announcing a public hearing on the matter to be held January 5, 1998. These letters explained the property owners would be responsible for approximately $360,000 of the project and each tax parcel would be assessed approximately $25,000; however, such numbers were approximations subject to change depending on final construction costs.

On December 15, 1997, the City passed two resolutions for the purpose of creating the Red Rock LID. The first, Resolution 97–93, initiated the process of forming the LID. Pursuant to I.C. § 50–1706, Resolution 97–93 describes the proposed LID's boundaries and improvements. The second resolution, Resolution 97–110, is more detailed as required under I.C. § 50–1706, in order to give the public appropriate notice of the City's proposed actions. Resolution 97–110 again provides a description of the proposed LID's boundaries and improvements but also includes more information regarding the assessment itself and opportunities for public comment.

Resolution 97–110 estimates the total cost of the improvements to be $1,070,352, of which $367,935 would be covered by assessments. In terms of apportioning the total assessment, the Resolution is slightly confusing, both describing a "per lot" as well as a "per owner" division of costs. First, Resolution 97–110 provides the assessments will be shared among property owners. The Resolution states, *"Each such lot and parcel of land* shall be assessed for a portion of the costs and expenses of LID 97–2 in proportion to the benefits derived to each such lot and parcel of land." (Emphasis added). However, the Resolution also provides, "The City

Council proposes each lot and parcel of land shall be benefited equally by the improved water system and that expenses and cost of LID 97–2 shall be equally divided among the 17 *property owners*." (Emphasis added).

As for opportunities for comment, Resolution 97–110 describes the time and place for the public hearing on the creation of the Red Rock LID and provides for written comments to be filed with the City Clerk no later than 5:00 p.m. on January 5, 1998, the date of and time of the public hearing. At the public hearing, the City Manager reported that no written comments on the proposed LID had been received. However, Councilman Wallace reported property owner, Doug Marsh, had contacted her and indicated that the LID assessment would likely destroy his business.

Despite these concerns, on February 23, 1998, the City passed Ordinance 4210, creating and establishing the Red Rock LID. Thereafter, the City received a bid for constructing the system which was considerably lower than the anticipated costs. In addition, over the course of construction, some changes to the original design were made.

On July 19, 1999, the City Council adopted Resolution 99–54, which set the public hearing on the Final Assessment Roll for August 9, 1999. At this second hearing, appellants Wood and Curry appeared and appellants Marsh and Seubert Excavators sent notices of objection. Nonetheless, on September 13, 1999, the City Council enacted Ordinance 4247 approving the Final Assessment Roll. Ordinance 4247 states the City Council had considered all relevant protests and objections.

On October 8, 1999, the appellants filed a timely Notice of Appeal in the Second Judicial District court protesting Final Assessment Roll established by the City. Pursuant to I.C. § 50–1718, such an appeal does not require a pleading and none was offered. Over the first two days of trial, appellants presented their case in chief. Thereafter, one of the appellants, the Sweeney Partnership, sought to withdraw from the proceedings and presented the court with a prepared Order Allowing Withdrawal of Appeal. The Court did not sign the Order but delayed ruling on the requested order until the trial was completed.

On April 21, 2000, the district judge issued Findings of Fact, Conclusions of Law, and an Order upholding the formation of the LID and ordering the City to modify the final assessment amount from $25,281 to $21,413 to account for work done outside the LID boundaries. The property owners (Owners) then filed a timely Notice of Appeal to this Court.

## II.

## STANDARD OF REVIEW

■■■ The Idaho Rules of Civil Procedure provide, the "standards of review applicable to judicial review of ... local government actions shall be as provided by statute." I.R.C.P. 84(a). The statute at issue here, the "Local Improvement District Code," provides for direct appeal of assessments to the district court where the case is tried "as in the case of equitable causes." I.C. § 50–1718. On appeal to the district court, the district court conducts a de novo review of the city's actions under the LID authority, applying a presumption of validity to the city council's actions. *Simmons v. City of Moscow*, 111 Idaho 14, 19, 720 P.2d 197, 202 (1986). "Only 'clear proof' of great force will warrant a conclusion that an assessment is erroneous so as to overcome the presumption of validity." *Id.* (citing 14 McQuillin, *Municipal Corporations*, 3d Ed. (1970), § 38.186). This deferential approach reflects the legislative nature of municipal decisions to conduct improvements and impose taxes. Nonetheless, even while the courts presume the assessments are valid, because levying such assessments are in derogation of private property rights, courts require strict compliance with mandatory statutory procedures. 13 McQuillin, *Municipal Corporations*, 3d Ed. Revised (1997), § 37.39. Thus, the municipal power enjoys broad discretion, so long as mandatory statutory procedures are followed.

■■■ On appeal to the Supreme Court, this Court exercises free review of the district court's conclusions of law and may substitute its view for that of the district court on a legal issue. *Knight v. Dept. of Ins.*, 119 Idaho 591, 592, 808 P.2d 1336, 1337 (Ct.App.

1991). In contrast, this Court will not set aside the findings of fact, unless they are clearly erroneous. *Ward v. Ada County Highway Dist.,* 106 Idaho 889, 892, 684 P.2d 291, 294 (1984). If the findings of fact are supported by substantial and competent, though conflicting, evidence, this Court will not disturb the findings. *Id.*

## III.

## DISCUSSION

The LID is a means by which local governments provide for the financing of improvements. The Idaho LID Code provides two means of appealing such decisions: the appellants can either challenge the City's decision to form the LID or they can challenge the actual assessments imposed. Only the Marshes challenge the creation of the LID; however, all five Owners challenge the assessments imposed. In addition, on appeal the Sweeney Partnership challenges the trial court's decision to grant his motion to withdraw after the trial was concluded. This Court determines the district judge properly considered the Marshes' appeal and properly determined what costs the City impermissibly financed through the LID; however, the district judge erred in upholding the validity of the Final Assessment Roll and by failing to timely rule on the Sweeney Partnership's motion to withdraw.

A. *The City Properly Considered the Marshes' Protest Concerning the Creation of the LID.*

The Marshes argue the trial court erred in determining the Marshes failed to file a timely protest to the inclusion of their property within the LID. Moreover, because they brought forth a timely protest, and the City did not make a specific ruling or finding regarding the protest, their property should not be included in the LID.

■ Challenges regarding the creation of a LID are governed primarily by I.C. § 50–1709. "Any owner of property to be assessed in the proposed local improvement district . . . shall have the right, in advance of the hearing, to file in writing a protest to the creation of the district or making any other

objections in relation thereto." I.C. § 50–1709. In response to such protests, "the council shall in open and public session consider all protests which have been filed in writing in advance of the hearing . . . ." *Id.* Further, "The vote on the . . . . ordinance creating the improvement district shall constitute the vote as to whether or not the council will proceed." *Id.*

■ The Marshes contend this provision provides each landowner with a right to file a protest prior to the public hearing and requires the City Council to issue some type of specific ruling as to each protest. However, this Court determines that if the City has provided the property owners with an opportunity to file a protest, and there is evidence the City considered the protest, the decision regarding whether or not to proceed, in effect, constitutes the City's decision regarding the merits of the protest and the statute is satisfied.

Here, there is evidence the City considered the Marshes' protests but, nonetheless, decided to include the Marshes' property in the LID. As the district judge determined in the Conclusions of Law, Paragraph 3, "This Court believes that Mr. Marshes' concerns expressed in his initial letter and phone discussions prior to the hearing were dealt with by the City Council and thus Appellants' argument has no merit." Therefore, the Marshes' argument for excluding their property from the LID is not persuasive.

B. *The Final Assessment Roll Should Be Remanded to the City for Reassessment.*

The Owners argue the Final Assessment Roll should be invalidated for three reasons: (1) the assessment was void *ab initio* for failure to comply with mandatory statutory procedures; (2) the final assessment was incorrect in assessing the property "per parcel" as opposed to "per owner;" and (3) the decision to assess each property equally was not supported by a showing of commensurate benefit to the parcels. Of these arguments, only the third is persuasive, and this Court finds the Final Assessment Roll invalid because the City failed to show it used any sort of method for determining the assessment

according to the benefits received by each parcel.

■ The Owners' first argument for invalidating the assessment is the City failed to comply with the LID statute because it did not provide an engineer's report in the form required under I.C. § 50–1712. Therefore, the Owners argue, the Final Assessment Roll should be found void *ab initio* for failure to comply with mandatory statutory procedures. This argument is unpersuasive because the City complied with the mandatory statutory procedures.

In order to comply with I.C. § 50–1712, the City must prepare a duly certified engineer's, and this report must contain specific financial information relating to both the costs of the improvements made as well as the determination of assessments. I.C. § 50–1712. In addition, this report must be provided to the Council and the Clerk prior to the public hearing on the Final Assessment Roll. *Id.* This report is extremely important because it contains the information necessary for the property owners to properly object to the Final Assessment Roll.

The Owners contend the engineer's report failed to comply with this statutory provision because the document identified as the final engineer's report at trial contained the relevant cost information, but failed to address the assessment information. In addition, the Owners argue the report, as supplied at trial, was dated September 10, 1999, a month after the public hearing on the subject, which took place on August 9, 1999.

The district judge correctly resolved this issue by finding there were two documents, identified as the engineer's report and the Final Assessment Roll, which together provide the information required by the statute. Further, while these documents, as submitted into evidence, were dated September 10, 1999, over one month after the date of the hearing, the Owners did not argue below that they did not receive the information in a timely fashion. Moreover, the district judge determined the property owners had notice of the required information prior to the hearing on the Final Assessment Roll. Therefore, the Final Assessment Roll is not invalid for failure to comply with required statutory procedures.

■ The Owners' second argument for holding the Final Assessment Roll void is the City divided the total costs of the assessment "per parcel" as opposed to "per owner." The Woods argue this was in error because Resolution 4210, creating the Red Rock LID, only provided for assessments per owner and each of the owners of two lots in the LID use these lots as single, contiguous parcels of land. This Court again finds these arguments without merit. The City did not err in determining the assessment should be applied per parcel, because it provided the property owners with notice of its intent to assess per parcel and acted within the scope of the LID authority in assessing per parcel.

As the district judge correctly determined, both Resolution 97–110, giving notice of the City's intention to create the LID, and Ordinance 4210, actually creating the LID, state the assessments shall be made against each lot or parcel. In addition, the district court concluded it was irrelevant that property owners may use two adjacent lots as one seamless piece of property. They own the property as separate units and can use or sell the property as separate units. The district judge's reasoning is sound and his conclusions should be upheld. Therefore, the Final Assessment Roll is not void for assessing the property within the LID per parcel as opposed to per owner.

■ The Owners' third argument for invalidating the Final Assessment Roll is that the City failed to demonstrate it applied any method for measuring the benefits derived from the improvements or in any way considered such benefits when determining the assessments. This Court agrees; therefore, the Final Assessment Roll should be remanded to the City for reassessment based on the benefits conferred on the property within the LID resulting from the water system improvements.

■ The LID Code provides four possible means of determining assessments, including the front foot method, square foot method, a combination of those, or in proportion to the benefits derived to the property.

I.C. § 50–1707(c); *Simmons v. City of Moscow*, 111 Idaho at 19, 720 P.2d at 202. When determining assessments on the basis of benefits derived, "it is essential that it shall appear from the proceedings themselves that such was the principle upon which the assessment was made. An assessment based upon the cost of the improvement instead of the actual benefits to be assessed is invalid." 14 McQuillin, *Municipal Corporations*, 3rd Ed. Revised (1997), § 38.113. Nonetheless, while an assessment must be reasonably proportional to the special benefit derived, the law does not require the assessment correspond exactly to the benefits received. *Simmons v. City of Moscow*, 111 Idaho at 20, 720 P.2d at 203. In addition, in determining the assessments according to benefits-derived, "[t]he most any officer or tribunal can do is to estimate the benefits as to each tract of land upon as uniform a plan as may be in the light afforded by available information." *Id.* (quotation omitted).

This Court finds the Final Assessment Roll should be invalidated because the City failed to provide the district court with any sort of method it used to tie the benefits received to the amount of the assessment. Further, there is evidence suggesting the City did not look to benefits alone but considered the costs when determining the assessment amount.

Examples of the City's concern for cost is evident in a letter from the City to the property owners dated September 24, 1996, in which the City explained, "We have evaluated several means to equitably share the remaining cost of $420,000 among the twenty-five Red Rock property owners .... The most equitable one at this time appears to spread the cost equally among each property owner." Further, the City Planner testified at trial the City determined the assessment amount by calculating the total amount needed for the water project and then subtracting the amount received from the grant and the amount the City contributed in the form of waived hook-up fees and miscellaneous project costs. The amount remaining was to be covered by the property owners within the LID. Finally, despite changes in the number of parcels assessed and the total amount to

be collected, the estimated assessment continued to be split equally among the remaining property owners. Thus, the assessment per parcel fluctuated due to factors other than the benefit derived to each parcel.

Ultimately, it seems the City divided the costs equally among the parcels because it was the easiest way to divide the cost, as opposed to determining the benefit, among the property owners. Because these parcels range in size from .67 acres to 12 acres and have varying opportunities for development, it seems illogical to conclude each benefits equally from the improvements built. For these reasons, this Court reverses the district judge and remands the case to the City for reassessment pursuant to I.C. § 50–1720.

C. *The District Judge Correctly Determined the Total Assessment Should be Reduced to Account for Certain Work Performed Outside the LID Boundaries and The Property Owners Within the LID Must Not Bear the Burden of Financing these Impermissible Costs.*

The Owners argue the assessments should be reduced to reflect excess costs in three areas. These areas include costs associated with (1) construction in the Nordby Heights area, (2) a complete asphalt overlay on Hatwai Road, and (3) extending the project eastward. The district court properly concluded the assessments should be reduced for the costs associated with extending the project eastward but should not be reduced for work in the other two areas, which it characterized as necessary to the construction of the water system as planned and described in the applicable resolutions and ordinances.

Again, the City's determination of the area benefited and costs associated with the construction of improvements within the LID, as legislative determinations, are afforded a high degree of deference.

A public improvement having been made, the question of determining the area benefited by such improvement is generally held to be a legislative function, and such legislative determination, unless palpably unjust, is usually conclusive and not subject to judicial interference unless arbi-

trariness, abuse, or unreasonableness be shown.

*Simmons v. City of Moscow,* 111 Idaho at 20, 720 P.2d at 203. Further, in reviewing the City's determination of appropriate costs associated with the LID and the areas benefited by the improvements, the trial court engaged in a factual determination. Therefore, on review, this Court does not set aside the trial court's findings unless clearly erroneous. *Ward v. Ada County Highway Dist.,* 106 Idaho at 892, 684 P.2d at 294.

■ *1. Nordby Heights.* The Owners argue the construction in Nordby Heights, an area to the west of the LID boundaries, reflects an impermissible westward expansion of the project and the costs associated with such an impermissible expansion should be reduced from the final assessment. However, the district judge determined, "This Court is convinced that the water main installed through the Nordby Heights was necessary for the water system within LID 97–2 to operate and that the costs associated with that construction are reasonably related to the assessment for the LID." This finding is supported by the testimony of Mr. Witthaus, the project engineer, who testified the construction was simply an effective means of connecting the Red Rock system to the City system. Because the district judge's findings with regard to the Nordby Heights' construction are supported by competent evidence, this Court affirms the district judge's decision in this regard.

*2. Hatwai Road.* The Owners also argue the costs associated with the asphalt overlay on Hatwai Road were impermissibly included in the assessment, because they were not provided for in Ordinance 4210. Because the costs were impermissible, the Owners argue the assessment should be further reduced by $74,474.10, the established cost of the repaving.

■ There is testimony on both sides of this issue. Mr. Witthaus, the project engineer, testified the City originally intended to "patch back" the road as opposed to engaging in a complete repaving. Thus, the projected costs of the project reflected "patch back" expenses as opposed to the costs of a complete overlay. While Mr. Witthaus testi-

fied he did not believe the overlay was necessary, the City Manager testified it was. The district judge resolved the issue as follows: "This Court believes that though the necessity of the overlay is perhaps debatable, the decision to proceed with the overlay was not unreasonable or arbitrary in light of the circumstances."

Because there is competent, albeit conflicting, evidence to support the district judge's finding, it should not be disturbed. Furthermore, as the district judge correctly noted, decisions such as this warrant judicial deference to the municipality and, absent evidence of unreasonable or arbitrary action, should be upheld. Because it was reasonable to determine the asphalt overlay was a necessary expense in the overall budget for constructing the water line improvements, the City's decision to include these costs in the assessment should stand.

■ *3. Eastward Expansion.* The district judge correctly concluded the Final Assessment Roll should be reduced to account for work done to expand the project eastward. The district court determined "the inclusion of costs in the project for work done beyond the Marsh property at 36th Street North to the Lawrence property cannot rightfully be assessed against the property owners in the Red Rock area." The district judge made this finding in part based on the fact "the water lines beyond the Marsh property at 36th Street in no way benefit the Red Rock property owners."

The Owners do not take issue with this portion of the district judge's opinion but argue the judge's method for reducing the final assessments to account for such impermissible costs was in error. This issue is rendered moot by this Court's determination that the final assessment was invalid for failure to properly apply the benefits-derived approach. However, on remand for reassessment, the City must make certain the property owners within the LID do not ultimately bear the burden of these excess costs.

D. *The District Judge Abused His Discretion by Failing to Rule on Sweeney's Motion for Withdrawal.*

■ Appellant, Sweeney Partnership, argues the district judge erred by refusing to

allow it to withdraw until the trial was concluded. The Sweeney Partnership does not take issue with the district judge's initial decision not to allow it to withdraw, but argues it was unfair to keep it in the litigation and to take advantage of Bruce Sweeney's status as a party, only to exclude the Partnership from the benefits of the litigation. This Court agrees. While the trial judge generally enjoys wide discretion in determining a motion to withdraw, under the circumstances presented here, the district judge abused this discretion by delaying his ruling on the motion.

The procedural rules that apply to the appeal of a city's actions taken under the LID authority come from a variety of sources. First, the LID Code itself supplies the procedural rules. I.R.C.P. 84(a). However, if the statute does not provide guidance on the matter at issue, then Rule 84 is used. "In the event there is no stated procedure or standard of review, then Rule 84 provides the procedures for the district court's judicial review of actions ... of a local government." I.R.C.P. 84(a). Further, where neither the statute nor I.R.C.P. 84 address the issue, then the Idaho Rules of Civil Procedure should be consulted when the appeal is before the district court. "Any procedure for judicial review not specified or covered by these rules shall be in accordance with the appropriate rule of the I.R.C.P. or the I.A.R. to the extent the same is not contrary to this Rule 84." I.R.C.P. 84(x).

Neither the LID Code nor I.R.C.P. Rule 84 addresses the procedural issue of withdrawal. While I.C. § 50–1709 discusses waiver of an appeal by withdrawal, it only applies to objections to the initial formation of the LID. The statute states, "Such waiver shall not preclude [the property owner's] right to object to the amount of the assessment at the later hearing provided for such purpose." I.C. § 50–1709. Because the focus of the Sweeney Partnership's appeal was on the Final Assessment Roll, as opposed to

formation of the LID and neither the LID Code nor Rule 84 address the issue, the Idaho Rules of Civil Procedure apply.[1]

■■■■ Idaho Rule of Civil Procedure 41(a)(1) provides for withdrawal, or voluntary dismissal, as a matter of right:

[A]n action may be dismissed by the plaintiff without order of the court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever occurs first or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

I.R.C.P. 41(a)(1). Because the notice of withdrawal was signed following the presentation of the Owners' case in chief, and not all the parties signed a stipulation of dismissal, the Sweeney Partnership could not withdraw as a matter of right under Rule 41(a)(1). Therefore, Rule 41(a)(2), which provides for dismissal by order of the court, applies. "Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." I.R.C.P. 41(a)(2). This rule provides the trial court with vast power subject only to an abuse of discretion standard. *Jones v. Berezay*, 120 Idaho 332, 335, 815 P.2d 1072, 1075 (1991). There is no abuse of discretion where the trial court perceives the issue in question as discretionary, acts within the outer limits of its discretion and consistently with applicable legal standards, and reaches a decision through an exercise of reason. *Rockefeller v. Grabow*, 136 Idaho 637, 643, 39 P.3d 577, 583 (2001).

When the Sweeney Partnership initially attempted to withdraw, the district court reasoned that withdrawal was inappropriate because it would cause delay and was unfair to the City (which certainly would have provided a basis for denying the motion to withdraw). The problems associated with the

---

1. Contrary to Sweeney's suggestion, the Idaho Rules of Appellate Procedure do not apply in this proceeding. Sweeney argues the district judge should have applied I.A.R. 32(b), providing for voluntary dismissal of an appeal as a matter of right. However, as provided by the LID Code,

this case was tried by the district court in a de novo proceeding, "as in the case of equitable causes." I.C. § 50–1718. Therefore, as in the case of equitable cases before the district court, the Idaho Rules of Civil Procedure should apply.

withdrawal were evidentiary. In order to introduce certain evidence at trial, the City needed the Sweeney Partnership as a witness or a party. While the City may have been able to subpoena Bruce Sweeney upon his withdrawal, the district judge determined to avoid such delay and continue with the proceedings. Nevertheless, after the trial was over and before submitting the Findings of Fact, Conclusions of Law, and Order, the district judge granted the Sweeney Partnership's motion.

Under these circumstances, the trial judge's delay in ruling on the motion to withdraw was an abuse of discretion. While the judge's delay was done for reasonable purposes, the failure to rule on the motion was unfair to the Sweeney Partnership and Bruce Sweeney by requiring him to continue to participate in the lawsuit and remain subject to such costs before dismissing him at a point when it would have been to his benefit to remain involved. Thus, the Sweeney Partnership should continue to be a party to this litigation.

## IV.

## CONCLUSION

While the City of Lewiston enjoys great discretion in the process of creating and executing LID's for financing local improvements, it must follow statutory procedures. Because the City failed to show a method for determining the benefits received by the property owners in the process of establishing appropriate assessments, the Final Assessment Roll must be remanded to the City for reassessment. We award costs on appeal to Appellants.

Justices SCHROEDER, WALTERS, KIDWELL, and EISMANN, concur.