88 P.3d 749

In the Matter of the Termination of the Parental Rights of Jane Doe and John Doe Re: Baby Boy Doe, A Minor Child.

ROE FAMILY SERVICES, Plaintiff–Appellant,

v.

John DOE, Defendant–Respondent,

and

John and Jane Roe, husband and wife, Intervenors–Appellants.

In the Matter of the Termination of the Parental Rights of Jane Doe and John Doe Re: Baby Boy Doe, A Minor Child.

Jane Doe, Plaintiff–Appellant,

v.

John Doe, Defendant–Respondent.

In the Matter of the Termination of the Parental Rights of Jane Doe and John Doe Re: Baby Boy Doe, A Minor Child.

Roe Family Services and Jane Doe, Plaintiffs,

v.

John Doe, Defendant–Respondent,

and

John Roe and Jane Roe, Intervenors–Appellants.

Nos. 29781, 29788, 30010.

Supreme Court of Idaho, Boise, January 2004 Term.

March 29, 2004.

Holden, Kidwell, Hahn & Crapo, Idaho Falls; Dial, May & Ramrell, Chtd., Pocatello, for appellant Roe Family Services. Dale W. Storer argued.

Cooper & Larsen, Pocatello, for appellant Jane Doe. Reed W. Larsen argued.

Woolf, Combo & Thompson, Idaho Falls, for respondent John Doe. William P. Combo argued.

Racine, Olson, Nye, Budge & Bailey, Chtd., Pocatello, for appellants John Roe and Jane Roe. Mitchell W. Brown argued.

TROUT, Chief Justice.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves an appeal from a district court order reversing a decree of parental termination issued by a magistrate judge. The magistrate judge's decree of termination terminated the natural father, John Doe's (the Father), parental rights to Baby Boy Doe and granted custody to the proposed adoptive parents John and Jane Roe (the Roes). The Appellants in this case are Roe Family Services (RFS), Baby Boy Doe's natural mother, Jane Doe (the Mother), and the Roes. The Father is the Respondent.

On December 7, 2001, the Mother informed the Father that she was pregnant with his child. At the time, the Mother lived in Pocatello and the Father lived in Idaho Falls. They were not married, but the couple had been involved in a sexual relationship for over three years. After finding out about the pregnancy, the Father did not ask the Mother to marry him, but did ask her to move in with him. The Mother declined his offer.

Although the Father was employed during the pregnancy, he did not pay any medical expenses during the pregnancy, claiming that RFS had agreed to cover them. Prior to the birth, the Father's insurance carrier informed him that since he and the Mother were not married, he had no legal obligation to provide coverage and coverage was therefore not available until after the baby's birth. The Father did provide a baby carrier, stroller, clothes, and other items prior to the baby's birth.

The Mother sought counseling from RFS during her pregnancy and became a client of the organization after filling out a services application. The Father never filled out a services application and, according to RFS, the organization never considered the Father a client and did not advise him of the steps necessary to protect his parental rights. RFS claims it only discussed family histories, reviewed adoptive family profiles, and informed the Father that he would have to appear in court to consent to the adoption. RFS further claims it told the Father that RFS could not give legal advice.

During the pregnancy, the Father and Mother continued to see each other on weekends and discussed whether to put the child up for adoption. After vacillating back and forth, late in the pregnancy the Mother decided to place Baby Boy Doe for adoption. According to the Mother, as her due date approached, the Father pressured her to keep the baby and she became more and more undecided. According to the Father, he also vacillated between adoption and keeping the baby. He went to RFS at the Mother's request and participated in the selection of adoptive parents, but by June 2002 he decided he wanted to parent the baby.

The Father and Mother were in agreement they would keep the baby when Baby Boy Doe was born July 31, 2002 and the Mother notified RFS of their decision. On August 2, 2002, while still at the hospital, the Father and Mother both filled out an Acknowledgment of Paternity Application that requested the Father's name be recorded as the father of Baby Boy Doe on the birth certificate and stated that the Father would have the rights and responsibilities of a father. The Bureau of Vital Records and Health Statistics (Bureau) issued the birth certificate on September 9, 2002, listing the Father as Baby Boy Doe's natural father. RFS was aware that the Father had filled out the Paternity Acknowledgement.

The Father and Mother spent time together with the baby between August 2 and August 9, 2002. However, on August 8, 2002, the Mother called RFS and advised she did in fact want to place the baby for adoption. RFS advised the Mother that it was her decision whether to tell the Father of the adoption. On the same day, the Mother told the Father of her decision. The Father opposed the adoption and called an attorney for an appointment for August 12, 2002, to discuss retaining his parental rights. The Father also repeatedly called RFS stating his girlfriend was giving away his baby and he wanted to know his rights. On August 11, 2002, the Mother visited the Father and his

parents, but did not tell them she intended to proceed with the adoption.

RFS filed a Petition for Termination of Parental Rights and Temporary Custody and Guardianship on August 13, 2002, in magistrate court. The Mother appeared before the magistrate judge and signed a consent to termination of parental rights and waiver of hearing. At this time, the Mother testified the Father did not know she was proceeding with the adoption and that he was opposed to placing the baby. The Father received no notice of the August 13, 2002, hearing. The magistrate judge granted the petition and terminated the parental rights of the Mother based on consent. The magistrate judge then terminated the Father's parental rights based on his failure to file and register his notice of commencement of paternity proceedings as required by I.C. § 16–1513. The magistrate judge granted RFS custody and appointed RFS guardian for the purpose of adoption. RFS placed Baby Boy Doe with the Roes the same day.

The Mother called the Father on August 13, 2002, after the hearing to tell him she had given his baby up for adoption. The Father responded by calling his attorney and, on August 14, 2002, the Father prepared a Registration of Notice of Commencement of Paternity Proceedings. There is no evidence to show when the Bureau received this information. The Father's attorney referred him to another attorney, who then referred him to a third attorney. This attorney, the attorney of record in this case, filed a separate paternity action on September 9, 2002, and moved to set aside the August 13, 2002, termination decree.

On October 8, 2002, the magistrate judge held a full evidentiary hearing and on December 10, 2002, the magistrate judge denied the Father's motion to set aside the termination decree and granted the Roes custody. The Father filed a notice of appeal in the district court December 16, 2002. The district judge heard oral arguments May 12, 2003, and orally reversed the magistrate judge and remanded the case. The district judge issued a brief written order May 21, 2003, reflecting the May 12, 2003, decision, and on June 18, 2003, the district judge issued a Memorandum Decision and Order regarding the termination of parental rights. RFS then filed a notice of appeal, appealing the decision of the district judge to this Court.

On June 17, 2003, the Father filed a motion for visitation and the district judge granted the Father's motion, setting a 90 day supervised visitation schedule (the First Visitation Order). September 9, 2003, a show cause hearing was held in the district court, regarding the custody of Baby Boy Doe. The district judge then amended the First Visitation Order to grant the Father full custody on a graduated schedule beginning September 14, 2003, until December 10, 2003, when the Father would receive full custody (the Visitation Order). At this hearing, the Roes requested that the district judge give them a hearing on a motion to stay the Visitation Order under I.A.R. 13. The district judge indicated he would deny the stay. The Roes then made an oral motion to stay the proceedings, and the district judge denied the request. The Roes asked the district judge to consider evidence of the best interests of the child and the district judge refused. September 12, 2003, the Roes appealed the Visitation Order.

On advice from counsel, the Roes refused to comply with the Visitation Order on September 14, 2003, asserting that an automatic 14 day stay came into effect under I.A.R. 13(a) when they filed their notice of appeal. The next day, the Father filed a motion to enforce the Visitation Order and requested additional visitation. On September 17, 2003, the district judge entered an order directing the Custer County Sheriff to accompany the Father when he picked up the infant from the Roes the next day (Enforcement Order). The district judge also ordered the Roes' counsel to pay the fees incurred by the Father's counsel for preparing for the enforcement hearing since the Roes' counsel's refusal to comply with the Visitation Order necessitated the hearing.

RFS, the Mother, and the Roes appeal the district judge's order reversing and remanding the magistrate judge's termination decree and judgment. The Roes also appeal the district judge's denial of the Roes' motion

to stay the Visitation Order and the district judge's refusal to consider evidence of the best interests of the child. Finally, the Roes, the Mother, and RFS appeal the district judge's attorney fee award to the Father in the Enforcement Order and request attorney fees on appeal under I.C. § 12–121.

## II.

### STANDARD OF REVIEW

■ Where a district court elects to review the existing record as an appellate proceeding, it must apply the same standards of review that are applicable to appeals from the district court to the Idaho Supreme Court. I.R.C.P. 83(u)(10); *Pieper v. Pieper*, 125 Idaho 667, 669, 873 P.2d 921, 923 (Ct. App.1994). A trial court's decision to terminate parental rights must be based on substantial and competent evidence. *Dayley v. State Dep't of Health and Welfare*, 112 Idaho 522, 525, 733 P.2d 743, 746 (1987). When an appeal is heard on the record, the district court is required to enter an appellate judgment which includes instructions to the magistrate court. I.R.C.P. 83(z).

■ When reviewing a decision rendered by the district court in its appellate capacity under I.R.C.P 83(a), this Court considers the record before the magistrate court independently of the district court's determination, giving due regard to the district court's analysis. *Pieper*, 125 Idaho at 669, 873 P.2d at 923. The focus of review is "whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981). In an action to terminate parental rights, where a "clear and convincing standard has been noted explicitly and applied by the trial court, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence." *In the Matter of Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). Furthermore, where a case does not involve disputed questions of fact, but rather turns on the proper identification or application of the law, this Court

exercises free review. *Everitt v. Higgins*, 122 Idaho 708, 710, 838 P.2d 311, 313 (Ct. App.1992).

## III.

### DISCUSSION

A. **Magistrate judge's findings and conclusions**

1. *Idaho Code Title 16, Chapter 20 applies to this case.*

■ The magistrate judge's factual findings are supported by substantial and competent evidence, but he failed to apply the correct law to the facts of this case. The magistrate judge determined that Idaho Code title 16, chapter 15 (titled "Adoption of Children") applied to the case because RFS's petition to terminate requested termination of the Father's rights under I.C. § 16–1513, and also requested legal custody or temporary guardianship pending adoption, even though RFS did not join a petition for adoption with the petition to terminate. The magistrate judge also found that since Baby Boy Doe was placed with an adoptive family the same day, then it was clear that the purpose of the petition to terminate was not only to terminate parental rights, but was "a proceeding in connection with the adoption of the baby." The Father disagreed, arguing Idaho Code title 16, chapter 20 (entitled "Termination of Parent and Child Relationship") applied to the case. The district judge agreed with the Father, finding that RFS did not seek to place Baby Boy Doe for adoption because RFS did not file an adoption petition under I.C. § 16–1506 at the same time it sought to terminate the Father's parental rights, and therefore Idaho Code title 16, chapter 20 applied.

Based upon the petition filed, the August 13, 2002, hearing was a termination proceeding, not an adoption proceeding. Idaho Code § 16–1506(1) provides that adoption proceedings are commenced by filing a petition. Additionally, I.C. § 16–1506(4) provides "proceedings for termination of a parent child relationship in accordance with chapter 20, title 16, I.C., and proceedings for adoption may be consolidated and determined at one

hearing *provided that all the requirements of this chapter and as well as chapter 20, title 16, Idaho Code, be fully complied with*" (emphasis added). RFS did not comply with the provisions of I.C. § 16–1506 because RFS did not file a petition of adoption as is required to consolidate the hearings with its chapter 20 petition to terminate. As a result, the magistrate judge should have only considered the provisions of title 16, chapter 20 at the August 13, 2002, hearing.

2. *Pursuant to I.C. § 16–2007, the Father was entitled to notice of the August 13, 2002, hearing.*

■ Idaho Code § 16–2002(p) defines an unmarried biological father as "the biological father of a child, which biological father was not married to the child's mother at the time the child was conceived or born." The notice provision contained in I.C. § 16–2007 provides in part:

> ... where the putative father has failed to timely commence proceedings to establish paternity under [I.C. § 7–1111], and by filing with the vital statistics unit of the department of health and welfare, notice of his commencement of proceedings to establish paternity of the child born out of wedlock, notice under this section is not required unless the putative father is one of those persons specifically set forth in [I.C. § 16–1505].

The Father is clearly the unmarried biological father of Baby Boy Doe. The question raised then, is whether the Father is entitled to notice as a putative father as "specifically set forth in [I.C. § 16–1505(1)]."

Idaho Code section 16–1505(1) provides that "notice of an adoption proceeding shall be served on each of the following persons: ... d) Any person who is recorded on the birth certificate as the child's father, with the knowledge and consent of the mother." Looking to I.C. § 7–1106 (entitled Acknowledgment of Paternity), voluntary acknowledgement of paternity is admissible as evidence of paternity and "shall constitute a legal finding of paternity upon the filing of a signed and notarized acknowledgment with the vital statistics unit at the department of health and welfare." Further, I.C. § 16–1504(1)(i), the statute relating to those who must consent to adoption, acknowledges I.C. § 7–1106 by requiring that consent to adoption must be given by an "unmarried biological father who has filed a voluntary acknowledgement of paternity with the vital statistics unit of the department of health and welfare pursuant to section 7–1106." Clearly, when a father files an affidavit acknowledging paternity with the knowledge and consent of the mother, he is entitled to notice of hearings and his consent must be obtained before terminating the parent child relationship.

At the magistrate court hearing, the Father argued he was entitled to notice under I.C. § 16–1505(1)(d) because he was recorded on the birth certificate as the child's father. According to the facts, on August 2, 2002, at the hospital, the Father and Mother filled out and had notarized a paternity affidavit requesting he be listed as the father on Baby Boy Doe's birth certificate, two weeks before his parental rights were terminated. This affidavit clearly states on the reverse side that by signing the affidavit, the Father would be "automatically identified as the legal father of this child" and he would "not have to go to court to be named the legal father of this child." The Bureau issued the birth certificate listing the Father on it September 9, 2002. The Father argued that even though the Bureau did not issue the certificate until September 9, 2002, his affidavit qualified him as the father listed on the birth certificate.

The magistrate judge, however, concluded that the language on the affidavit indicated the Father consented to the "recording" of his name and requested the birth certificate "be prepared," but the affidavit did not qualify as a birth certificate itself because the birth certificate was not "recorded" or "issued." In addition, the magistrate judge found that the Father's rights were terminated August 13, 2002, a month prior to the actual, physical recording of his name on the birth certificate September 9, 2003, and therefore he was not entitled to notice of the adoption proceeding under I.C. § 16–1505(1)(d). RFS similarly argues that since the birth certificate was not issued until September 9, 2003, it could not perform a proper

search to determine whether the Father's name was on Baby Boy Doe's birth certificate. RFS also points out that it obtained a certificate of search indicating no putative father was listed at the time of the hearing August 13, 2002 (although clearly RFS was aware the Father had filled out a paternity affidavit and was actively asserting his parental rights).

We agree with the district judge's assessment on appeal that the magistrate judge engaged in a hyper-technical reading of the statute. The fact that the Bureau had not finished the ministerial function of physically issuing the birth certificate is irrelevant to the question of whether the Father had acknowledged his paternity. In addition, the statement on the affidavit the Father signed specifically indicates that the Father did not have to go to court to be acknowledged as the father, and therefore the Father had no reason to institute a paternity action. In addition, RFS was entirely aware that the Father and Mother had submitted an affidavit in the hospital and it is disingenuous for RFS to argue it could not determine whether the Father had listed his name on the birth certificate. Furthermore, a close reading of the certificate of search RFS received from the Bureau specifically states that "this search ... should not be construed to imply there is not a father listed on the birth certificate."

In circumstances where the father and the mother both acknowledge who the biological father is and the father is willing to accept the rights and responsibilities of paternity, the provisions of 16–2007 and 16–1505 apply. If, on the other hand the mother does not join in the acknowledgement of paternity, then the father is required to follow the mandates of I.C. § 16–1513 and file proceedings for paternity and a notice with the Bureau.

Accordingly, we find that under I.C. § 16–1505(1)(d), the Father was entitled to notice of the termination hearing as a father who had acknowledged paternity because he had taken all the necessary steps to get his name listed as the father on the birth certificate prior to the termination of his rights and RFS was aware he had filled out the paterni-

ty affidavit. In addition, the Father should not be penalized under I.C. § 16–1513 for failing to commence paternity proceedings because both the Mother and Father acknowledged he was the father and should be listed on the birth certificate, and therefore, it was simply unnecessary to file a paternity action. As a result, the magistrate judge's conclusions of law are a misinterpretation of the notice requirements for termination proceedings and we agree with the district judge that this matter should be remanded to the magistrate judge so the Father can receive notice and have an opportunity to be heard.

**B. The district judge's decision relating to visitation and custody**

[7] The district judge's order entered after he had concluded the case should be reversed and remanded, required both parties to agree to a set visitation schedule. On July 11, 2003, at the First Visitation Order hearing the district judge indicated that he believed the Father, as the natural father, was entitled to full custody of Baby Boy Doe, but since the parties agreed to a visitation schedule pending appeal, the district judge would honor it. The district judge then proceeded to set September 9, 2003, as the day he would consider evidence on whether the Father was entitled to full custody. On September 9, 2003, a new Visitation Order was entered which granted the Father full custody on a graduated schedule.

The Roes argue any actions taken by the district judge after the May 21, 2003, order which remanded the case to the magistrate court, are void because the district judge chose to operate as an appellate court. Specifically, they argue the First Visitation Order, the subsequent Visitation Order, and Enforcement Order are void because the district judge went from hearing the matter on appeal to a trial de novo under 83(u)(2).

Idaho Code § 1–2213 and I.R.C.P. 83(b) define the scope of review for a district court, and according to precedent, a district court reviewing a decision of a magistrate court may review the case on the record as an appellate court and reverse, remand, or modify the judgment, or the district court may try the case de novo. *In the Matter of*

*Matthews,* 97 Idaho 99, 540 P.2d 284 (1975). In addition, I.R.C.P. 83(u)(1) provides that "upon an appeal from the magistrate's division of the district court, ... the district court shall review the case on the record and determine the appeal as an appellate court in the same manner...." Furthermore, I.R.C.P. 83(u)(2) provides that "upon appeal from the magistrate division of the district court involving a trial de novo, the district court shall render a decision in the action as a trial court as though the matter were initially brought in the district court." This Court interprets I.R.C.P. 83(u)(2) to allow the district court in an appellate review to hear additional evidence on other issues. *Hawkins v. Hawkins,* 99 Idaho 785, 589 P.2d 532 (1978). In *Koester v. Koester,* 99 Idaho 654, 656–57, 586 P.2d 1370, 1372–73, (1978) this Court held:

> "[T]hat where the district court chooses to handle an appeal as an appellate review and then elects to hear additional evidence on one or more issues, these issues affected by the additional evidence shall be treated as if involving a trial de novo. In other words, to the extent that the new evidence affects the decision of the magistrate, the district court shall act as a trial court. Where the additional evidence admitted by the district court does not affect the determination of the magistrate, the district court shall act as an appellate court" (emphasis added).

*See also Winn v. Winn,* 101 Idaho 270, 611 P.2d 1055, (1980) and *Dillard v. State,* 101 Idaho 917, 623 P.2d 1294 (1981). It appears then, "the district court's options are not always mutually exclusive." *Winn,* 101 Idaho at 272, 611 P.2d at 1057.

The issue is whether under the circumstances of the instant case, the district judge had the authority to decide issues of visitation and custody after the May 21, 2003, order remanding the case. We find that the district court lost authority over the issue of visitation when it remanded the case to the magistrate court because visitation is not a separate issue; rather, it is part of the remanded case. As a result, the district judge should have left to the magistrate judge the creation of a visitation schedule. However,

given the fact that the Visitation Order was appropriate in terms of reuniting the Father with the child and the Visitation Order can be reconsidered by the magistrate judge, the error if any, is harmless.

## C. Best interests of the child

██ RFS and the Roes claim they were prepared to put on testimony concerning the disruptive and potentially harmful effects a change in custody would have on Baby Boy Doe at the Visitation Order hearing September 9, 2003. The district judge refused to allow the evidence and excluded testimony from the Roes about their relationship with Baby Boy Doe, concluding that it was irrelevant for the court to hear testimony on "whether it's in the best interest of the child to remain in the custody of [the Roes] because the child was placed there illegally" and "natural father's rights here, ... are paramount." The district judge appears to have followed the reasoning in *Stockwell v. Stockwell,* 116 Idaho 297, 299, 775 P.2d 611, 613 (1989), where this Court stated:

> "In custody disputes between a "non-parent" (i.e., an individual who is neither legal nor natural parent) and a natural parent, Idaho courts apply a presumption that a natural parent should have custody as opposed to other ... interested parties. This presumption operates to preclude consideration of the best interests of the child unless the non-parent demonstrates either that the natural parent has abandoned the child, that the natural parent is unfit or that the child has been in the nonparent's custody for an appreciable period of time." *See In re Guardianship of Copenhaver,* 124 Idaho 888, 892, 865 P.2d 979, 983 (1993).

The district judge did not err in presuming that the Father was entitled to custody under the circumstances presented by this case and in refusing to consider evidence on the best interests of the child.

RFS and the Roes also argue that the district judge should have considered evidence of the best interests of the child during the Visitation Order hearing because "in all disputed matters under [chapter 15] or chapter 20, title 16, Idaho Code, the paramount

938

criterion for consideration and determination by the court shall be the best interest of the child." I.C. § 16–1506(4). Those provisions have no applicability to the district judge's determination regarding custody when the case was remanded because, as pointed out previously, this is not an adoption proceeding and the termination proceeding was handled improperly without notice to the Father. Therefore, consideration of the best interests of the child at this stage of the proceeding would be premature.

## D. District judge's award of attorney fees

■ At the September 9, 2003, Visitation Order hearing the Roes requested the district judge give them a hearing date for their motion for stay under I.A.R. 13(b) which they intended to make along with filing an appeal from the district judge's Visitation Order. According to the transcript of the September 9, 2003, hearing, the Roes' counsel stated "[w]e do intend to perfect this portion of the appeal immediately and would expect that pursuant to 13A [sic], the stay of 14–days will be effective." The district judge then indicated he would deny the motion for a stay so the parties waived notice and a hearing and the district judge denied the stay. The Roes did not comply with the Visitation Order on September 14, 2003, because they believed an automatic 14–day stay under I.A.R. 13(a) came into effect when they filed their notice of appeal from the Visitation Order on September 9, 2003. Thus, apparently Roes' counsel believed he had been denied a permanent stay under I.A.R. 13(b) but was still entitled to the automatic 14–day temporary stay imposed by Rule 13(a).

The district judge held a hearing to enforce the Visitation Order on September 17, 2003, and at that time the Roes' counsel again raised the issue of the stay under I.A.R. 13(a), arguing the stay was automatic and the district judge had only denied the motion to stay under I.A.R. 13(b). The district court reiterated that it had denied the Roes' motion to stay and that under I.A.R. 13(b)(11), the district court could "take any action or enter any order deemed advisable in the discretion of the court with regard to the custody or support of children pending any appeal." The district judge then ordered the Roes' counsel to pay the Father's counsel's attorney fees for preparing for the enforcement hearing, citing to I.C. §§ 12–121 and 12–123.

On appeal, the Roes argue that the issue of an automatic 14 day stay pending appeal under I.A.R. 13(a) was never addressed as part of the Roes' motion to stay the Visitation Order on September 9, 2003, and that the Roes' counsel believed he did not have to comply with the Visitation Order because the automatic temporary stay was in effect. As a result, the Roes argue their counsel did not fail to comply with the Visitation Order and should not have to pay the Father's counsel's attorney fees.

Irrespective of the correctness of the Roes' counsel's interpretation of the provisions of I.A.R. 13, there was no basis for the district judge to enter an award of attorney fees against Roes' counsel. I.C. § 12–121 provides for an award of attorney fees in a civil action to the prevailing party. The district judge was not awarding fees on the basis that John Doe had prevailed in this action, but rather, as a sanction for frivolous or unreasonable conduct. While I.C. § 12–123 was also cited by the district judge, and would provide a basis for an award of fees for frivolous conduct in a civil case, there is a specific procedure set forth in the statute requiring a motion by a party and notice and a hearing. None of those procedures took place in the instant case, and thus, the award of fees was improper.

## E. The Roes request for attorney fees on appeal

■ The Roes request attorney fees on appeal pursuant to I.C. § 12–121 as the prevailing parties. The Roes did not prevail on any significant portion of their appeal and therefore are not entitled to attorney fees on appeal.

## F. The Father's request for attorney fees on appeal

■ The Father requests attorney fees on appeal under I.C. § 12–121, arguing he is a prevailing party and the Appellants appeal raised frivolous, unreasonable claims without

any foundation. Because there were legitimate issues regarding the interpretation of the notice provisions of the adoption and termination statutes upon which this Court has not previously had an opportunity to rule, the appeal is not unreasonable or frivolous and we deny the Father's request for fees on appeal.

## IV.

## CONCLUSION

Counsel for RFS during oral argument characterized this case as a "tragedy". He is correct, it is. Unfortunately, the tragedy was largely of his client's own making. Had RFS given notice to the Father, who it knew to be asserting his identity as the biological father and objecting to adoption, this proceeding likely would never have occurred. The heartbreak now suffered by the potential adoptive parents and the anguish suffered by the Father and his family would have been alleviated by the simple expediency of giving the Father notice of RFS's intent to terminate his parental rights. Instead, RFS stepped out of its role as a neutral agency seeking the best outcome for unwanted and abandoned children, and instead, placed itself in the role of advocate for one particular outcome which it deemed preferable. By ignoring the Father's expressed desire to raise the child and by arguing for a strained and hyper-technical reading of the statutes, RFS has caused the unfortunate tragedy for which it continues to fight on appeal. There is no good outcome for any of the parties to this appeal, apart from clearly setting forth for RFS and other adoption agencies their obligation to act honestly and honorably to all parties who find themselves involved with a potentially unwanted pregnancy and not to act in some superior capacity to direct proceedings to the agency's chosen result.

The decision of the magistrate judge terminating the Father's rights is reversed and this matter is remanded to the magistrate court for further proceedings. If necessary, the trial court should also consider an appropriate custody or visitation order while this matter is pending to facilitate the Father's exercise of his rights as a biological parent.

The order of the district court awarding attorney fees as a sanction against the Roes' attorney is reversed. John Doe is awarded his costs on appeal.

Justices SCHROEDER, KIDWELL, EISMANN, and Judge WALTERS, Pro Tem, concur.