132 P.3d 421

Mundee M. **LEAVITT**, a deceased individual, Plaintiff,

v.

Kenneth M. **LEAVITT**, an individual, Defendant–Appellant,

v.

Tracee **Crawford**, an individual, Intervenor–Respondent.

No. 31350.

Supreme Court of Idaho, Boise, January 2006 Term.

March 20, 2006.

Ringert, Clark Chtd., Boise, for appellant. Jeffrey R. Christenson argued.

Leroy Law Office, Boise, for respondent. David H. Leroy argued.

Sisson & Sisson, Boise, for amicus curiae AARP.

TROUT, Justice.

This case involves Idaho's grandparent visitation statute which allows a court to award reasonable visitation rights to a grandparent upon a proper showing that visitation would be in the best interests of the child. Idaho Code § 32–719. Appellant Kenneth M. Leavitt (Leavitt), the child's father, appeals the district court's award of visitation rights to Respondent Tracee Crawford (Crawford), the child's maternal grandmother. Because we conclude the magistrate judge's decision terminating Crawford's visitation rights was based on substantial evidence and was not an abuse of discretion, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Adam was born to Leavitt and Crawford's daughter, Mundee M. Leavitt (Mundee). Leavitt and Mundee divorced in 1997. The divorce decree provided for equal shared custody of Adam, but stated that at such time as Mundee could no longer care for Adam due to her health problems, Adam was to reside primarily with Leavitt. In 1999, Crawford petitioned to intervene in the divorce case and seek grandparent visitation rights. Pursuant to a stipulation between Leavitt, Mundee, and Crawford, an order was entered granting Crawford visitation rights when Mundee no longer had custodial time with Adam.

Mundee died in March 2000, leaving Leavitt the sole custodian of Adam. Crawford's visitation rights "sprang" into existence at the time of Mundee's death. Since 1995, Crawford had assisted with raising Adam by watching him occasionally. When Leavitt and Mundee separated prior to their divorce, Crawford became more involved in Adam's upbringing while Mundee took evening classes and attempted to recover from her illness. Upon Mundee's death, Crawford en-

gaged in behavior that lead to the current dispute. Crawford violated the order granting her visitation rights by visiting Adam at his school without Leavitt's knowledge. Crawford took Adam to counseling without Leavitt's knowledge, as well. Also, over a nine month period, Crawford reported Leavitt to a state agency for abuse of Adam several times, however no abuse was ever found. Three days after the fifth and final abuse report was filed by Crawford, Leavitt began proceedings to eliminate Crawford's visitation rights.

After holding an initial hearing in August 2001, the magistrate court issued its memorandum opinion, in which it considered the United States Supreme Court's *Troxel* opinion recognizing the fundamental rights of a parent to direct a child's upbringing. *See Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The court then applied the presumption that fit parents act in the best interests of their children and gave deference to Leavitt's decision. For a variety of reasons, including the extensive friction and hostility between Crawford and Leavitt, the magistrate temporarily cancelled Crawford's visitation rights. After a full trial before the magistrate court, Crawford's rights were permanently cancelled in June 2002.

Crawford appealed to the district court, which conducted the appeal through judicial review of the record. In its February 2003 decision, the district court analyzed the evidence that had been presented to the magistrate court in 2001, including testimony from Adam's teacher that Adam became out of control when Crawford came to the school unannounced in February 2001, and that Adam was disruptive again in May on the days before and after a weekend visit with Crawford. The district court next reviewed evidence presented to the magistrate court in 2002, including Leavitt's testimony that after termination of Crawford's visitation rights, Adam had been diagnosed with ADD and another disorder for which he was receiving medication. Leavitt also testified, however, that Adam's behavior had improved after the visits with Crawford were terminated.

The district court determined the evidence presented to the magistrate court was insufficient to establish that time spent with Crawford was the origin of Adam's misconduct. The district court remanded to the magistrate court to further consider the public policy favoring extended family relationships, to make "additional findings" regarding the cause of Adam's behavioral problems in school and to analyze the best interests of Adam pursuant to I.C. § 32–717, which sets forth factors to consider in determining a child's best interests for custody purposes.[1]

On remand, the magistrate court declined to take additional evidence, believing that the record was sufficient from which to make the necessary additional findings. In its June 2003 memorandum decision, the magistrate court delved into further detail regarding Adam's behavior at school. The court made further findings that Adam's behavior had improved throughout the year until February 2001, when Crawford dropped in without permission, whereupon Adam immediately reverted back to his bad behavior. Thereafter, Adam's behavior improved until May 2001, when Adam found out he would be visiting with Crawford that weekend. The magistrate court determined Adam's contact with Crawford in school had caused Adam to misbehave. The court observed the relationship

---

1. Idaho Code section 32–717 includes the following provision:

(1) In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:

(a) The wishes of the child's parent or parents as to his or her custody;

(b) The wishes of the child as to his or her custodian;

(c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

(d) The child's adjustment to his or her home, school, and community;

(e) The character and circumstances of all individuals involved;

(f) The need to promote continuity and stability in the life of the child; and

(g) Domestic violence as defined in section 39–6303, Idaho Code, whether or not in the presence of the child.

between Leavitt and Crawford had become highly adversarial, and emphasized Crawford's violations of her visitation order. The magistrate court made detailed findings on each of the best interest factors listed in I.C. § 32–717, again concluded it was in the best interests of Adam that visitation be terminated and determined Crawford failed to carry her burden of proving otherwise.

On Crawford's second appeal, the district judge concluded he would conduct a limited trial de novo solely as to the facts relating to the cause of Adam's misbehavior. It appears the district court agreed to adopt the transcripts and exhibits before the magistrate court, but chose to accept new evidence on this one factual issue. Consequently, at the new hearing, the parties were limited to the presentation of evidence relating to the cause of Adam's behavioral problems. After hearing from competing experts at the limited de novo trial, the district court in October 2004 found Adam's disruptive behavior was not the result of Crawford's visitation, but rather was caused by Adam's ADD. The district court gave passing reference to the presumption that Leavitt was acting in Adam's best interests, but concluded Crawford established, by a preponderance of the evidence sufficient to overcome Leavitt's decision, that she should be allowed visitation. The district court then entered a structured order for counseling and supervised visitation so that Crawford could gradually be brought back into Adam's life. This appeal followed.

## II. STANDARD OF REVIEW

■ When reviewing a decision rendered by the district court in its appellate capacity under I.R.C.P. 83(a), this Court considers the record before the magistrate court independently of the district court, while giving due regard to the district court's analysis. *Roe Family Services v. Doe,* 139 Idaho 930, 934, 88 P.3d 749, 753 (2004). When a district court orders a trial de novo of a case that was already tried to a magistrate, this Court applies a different standard of review. This is so because an order for a trial de novo legally removes the magistrate court's decision from the judicial record. *Winn v. Winn,* 101 Idaho 270, 275, 611 P.2d 1055,

1060 (1980). Accordingly, only the district court's findings and conclusions will generally be reviewed by this Court. *See Latham Motors, Inc. v. Phillips,* 123 Idaho 689, 693, 851 P.2d 985, 989 (Ct.App.1992). The trial court's findings of fact will be upheld if supported by substantial and competent evidence, but this Court will freely review the court's conclusions of law. *Roe Family Services v. Doe,* 139 Idaho 930, 934, 88 P.3d 749, 753 (2004) (review of magistrate court decision); *Latham Motors, Inc.,* 123 Idaho at 693, 851 P.2d at 989 (Ct.App.1992) (review of district court decision). This Court will give due regard to a trial court's special opportunity to judge the credibility of witnesses who appear before it. *Wood v. City of Lewiston,* 138 Idaho 218, 61 P.3d 575 (2002).

■ With regard to child custody determinations, these are committed to the sound discretion of the magistrate court and will not be overturned on appeal unless such discretion is abused. *Biggers v. Biggers,* 103 Idaho 550, 555, 650 P.2d 692, 697 (1982). While this Court has not previously addressed the issue, there is no reason the same standard should not be applied to a magistrate court's decisions regarding grandparent visitation rights. We now hold visitation decisions made pursuant to I.C. § 32–719 are subject to the abuse of discretion standard of review. In reviewing an exercise of discretion, the appellate court must consider (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

## III. DISCUSSION

The key issues that will be addressed in this appeal are (1) the propriety of the district court's review of the magistrate court's decision; (2) the applicable burden of proof; and (3) whether the magistrate court abused its discretion.

## A. The district court's review

 Pursuant to the version of I.R.C.P. 83 governing this case,[2] on appeal from a magistrate court's decision, the district court had the option of (1) conducting an appellate review of the magistrate court's decision just as the appellate courts would conduct a review of a district court; or (2) wiping the slate clean by ordering a trial de novo and beginning the case anew. *Winn v. Winn,* 101 Idaho 270, 272, 611 P.2d 1055, 1057 (1980); *see* I.R.C.P. 83(b), (u); *see also Gilbert v. Moore,* 108 Idaho 165, 697 P.2d 1179 (1985). Idaho Rule of Civil Procedure 83(u)(2) controls the scope of review and states, "Upon an appeal from the magistrate['s] division of the district court involving a trial de novo, the district court shall render a decision in the action as a trial court as though the matter was initially brought in the district court." Trial de novo, this Court has explained, means "a trying of the matter anew—the same as if it had never been heard before." *Gilbert,* 108 Idaho at 168, 697 P.2d at 1182.

 As the term "de novo" implies, a district court is not allowed to combine a review on the record with a "partial" trial de novo except in certain limited circumstances. For example, a district court, having chosen to review the magistrate court's decision as an appellate court, is not thereby precluded from taking additional evidence on separate, distinct issues that were not addressed by the magistrate court. *See Roe Family Services v. Doe,* 139 Idaho 930, 88 P.3d 749 (2004) (concluding district court, acting as an appellate court, "lost authority over the issue of visitation when it remanded the case to the magistrate court *because visitation is not a separate issue* " (emphasis added)); *Koester v. Koester,* 99 Idaho 654, 586 P.2d 1370 (1978) (stating it's appropriate to consider new evidence in child custody action that father moved out of state after appeal was filed);

*Dillard v. State,* 101 Idaho 917, 623 P.2d 1294 (1981) (allowing new evidence that rehabilitation centers were no longer available where magistrate court based its decision on the availability of such centers).

 In sum, under the version of Rule 83 governing this case, the district court could proceed with the appeal from the magistrate court's decision in one of two ways: (1) the district court could act as an appellate court and consider the record from the magistrate court, yet hear new evidence on matters not addressed below because they occurred after the appeal was filed; or (2) the district court could choose to wipe the slate clean and conduct a "full" trial de novo. In this case, the district court did neither. There was no authority for the district court to decide that the evidence as to the cause of Adam's misbehavior was insufficient and allow Crawford a new opportunity to present evidence on an issue that had already been tried and decided. Apparently the district court intended to rely on the record before the magistrate court as to any other evidence presented; however, it is difficult to see the district court gave any meaningful consideration to that evidence. It appears the only evidence it considered was the new evidence presented in the "limited" trial de novo and, in fact, the district court refused to allow Leavitt to present evidence on any matters other than the one limited issue designated by the district court. As there was not a valid basis for the manner in which the district court attempted to conduct this case on appeal, it will be treated as though the district court was sitting in its appellate capacity and this Court will review the magistrate court's decision directly.

## B. The burden of proof

 According to I.C. § 32–719, a "court may grant reasonable visitation rights to grandparents or great-grandparents upon

---

2. The former version of Rule 83(b) directed that all appeals from the magistrate's division were to be heard by the district court as an appellate proceeding "unless the district court orders a trial de novo." Under the more restrictive, current version of Rule 83(b), the district court is directed to hear all appeals as an appellate proceeding unless "there is not an adequate record of the proceedings in the magistrate's division." The phrase "an adequate record" refers only to the *condition* of the record (relating to properly functioning recording equipment, etc., at the magistrate court); "adequacy" does not refer to the quality or sufficiency of the information found *in* the record.

a proper showing that the visitation would be in the best interests of the child." While the burden of proof is clearly on the party seeking visitation rights, an issue has arisen as to whether the preponderance of the evidence standard or the more stringent clear and convincing standard should apply. In order to analyze the appropriate standard, however, this Court must first determine the nature of the rights involved. *See Matter of Jenkins,* 120 Idaho 379, 383, 816 P.2d 335, 339 (1991) (citing *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)) ("Clear and convincing evidence is required by courts in fact-finding situations to protect important individual interests in civil cases.").

The United States Supreme Court has observed, "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel,* 530 U.S. at 64, 120 S.Ct. at 2060 (O'Connor, J., plurality). The Idaho Court of Appeals has noted that parents have "a fundamental right to make parenting decisions with regard to [their] children." *State, Dep't of Health and Welfare ex rel. Martz v. Reid,* 124 Idaho 908, 912, 865 P.2d 999, 1003 (1993). In the context of proceedings to terminate parental rights, this Court has concluded "[a] parent's right to custody, care and control of his or her child is a fundamental liberty right protected by the Fourteenth Amendment." *Bush, In Interest of,* 113 Idaho 873, 875, 749 P.2d 492, 494 (1988). This liberty interest, encompassing a parent's right to determine with whom his or her child may associate, is entitled to equally heightened protection in the visitation rights context. Given such a fundamental right, we conclude the clear and convincing standard of proof applies to actions brought under I.C. § 32–719.

## C. The magistrate court's decision

Again, this Court's review of the magistrate court's decision will be limited to determining solely whether the magistrate court's factual findings were supported by substantial and competent, albeit conflicting, evidence and whether the conclusions of law

properly follow from those findings. *See Roe Family Services,* 139 Idaho at 934, 88 P.3d at 753. The magistrate court's decision that visitation, in this case, was not in Adam's best interests is supported by the evidence presented to the magistrate court. Adam's teacher testified as to Adam's negative reaction to Crawford's visit at school and Adam's misbehavior immediately before and after Adam spent the weekend with Crawford. The relationship between Leavitt and Crawford was, at best, adversarial such that its effects could be "devastating" to Adam. When the time came that Mundee could no longer care for Adam, Crawford deliberately withheld that information from Leavitt so that primary physical custody of Adam would not switch over to Leavitt, as the parties had previously agreed. Crawford failed to sustain her clear and convincing burden of demonstrating she was entitled to some visitation despite Leavitt's wishes. In fact, it appears Crawford only presented evidence concerning her relationship with Adam to support her argument that she should be elevated to the status of a parent because Mundee and Adam had resided with her. The magistrate court's finding it was in the best interests of Adam that visitation be terminated is supported by substantial and competent evidence. Crawford failed to carry her burden of proving otherwise.

The magistrate court's decision terminating Crawford's visitation rights cannot be said to be an abuse of discretion. The ultimate determination as to whether visitation should be granted is committed to the sound discretion of the trial court. The magistrate court acted within the outer boundaries of its discretion and consistently with the applicable legal standards because its decision was guided by the principles announced in *Troxel.* Briefly, the *Troxel* Court was confronted with a Washington statute that allowed "any person" to petition a court for visitation rights "at any time," and authorized the court to grant such visitation rights whenever "visitation may serve the best interests of the child." Wash. Rev.Code Ann. § 26.10.160(3). After concluding a parent's right to control the upbringing of his or her child was fundamental, a divided Court struck down this "breathtakingly broad" stat-

ute as applied to the fit parent challenging the statute. *Troxel*, 530 U.S. at 67, 120 S.Ct. at 2061. Specifically, the Court determined (1) there is a presumption that a fit parent acts in the best interests of his or her child; (2) a judge must accord "special weight" to a fit parent's decision; and (3) a court may not "infringe on the fundamental right of parents to make child rearing decisions simply because [it] believes a 'better' decision could be made." *Id.* at 68, 71–73, 120 S.Ct. at 2061–2063.

Here, the magistrate court properly weighed Crawford's visitation rights against Leavitt's fundamental right to direct Adam's upbringing. The parties stipulated Leavitt was a fit parent. The magistrate court recognized Leavitt's fundamental right and afforded Leavitt the presumption that a fit parent acts in a child's best interests. In analyzing Adam's best interests, we note that after the first appeal the magistrate court was directed by the district court to apply the factors set forth in I.C. § 32–717. This direction from the district court was in error, as I.C. § 32–717 applies to custody disputes between equal and competing fundamental interests, with one limited exception when a grandparent seeks custody "where the child is actually residing with a grandparent in a stable relationship." I.C. § 32–717(3). The best interest factors of I.C. § 32–717(1) are not applicable to the best interest determination required by I.C. § 32–719 in a dispute between a parent and grandparents over visitation. The magistrate court's decision was not affected by the directive from the district court, however, as the magistrate court concluded visitation was not in Adam's best interests even without applying the I.C. § 32–717 factors. The decision to deny Crawford visitation rights was clearly within the realm of choices available to the magistrate court and that court acted consistently with the applicable legal standards.

Finally, under these circumstances, the magistrate court's decision was based on the exercise of reason. The magistrate court observed the relationship between Leavitt and Crawford had degenerated into a highly adversarial one that affected the stability of Adam's life. The magistrate court noted Adam's behavior had improved since Crawford's visitation was terminated. When com-

bined with the magistrate court's other findings, it is clear the magistrate court reached its decision to terminate Crawford's visitation rights based on an exercise of reason.

**D. The constitutionality of I.C. § 32–719**

Leavitt asks this Court on appeal to address the constitutionality of I.C. § 32–719 in light of *Troxel v. Granville, supra.* However, because we have reviewed the magistrate court's decision directly and the magistrate court ruled in Leavitt's favor, we need not consider Leavitt's challenge to the constitutionality of I.C. § 32–719. *See Poffenroth v. Culinary Workers Union Local No. 328,* 71 Idaho 412, 232 P.2d 968 (1951) (noting courts never anticipate a question of constitutional law before necessity of deciding it arises and a person not adversely affected by a statute may not challenge it).

## IV. CONCLUSION

We conclude the magistrate court's factual findings are supported by substantial and competent evidence and the magistrate court did not abuse its discretion in denying Crawford further visitation. Therefore, we affirm the magistrate court's order. We award costs on appeal to Leavitt.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.

