173 P.3d 1141

Andrew NAVARRO, Plaintiff–Appellant,

v.

Laura YONKERS, Defendant–
Respondent.

No. 34118.

Supreme Court of Idaho,
Boise, October 2007 Term.

Dec. 5, 2007.

884

Kevin J. Waite, Coeur d'Alene, for appellant.

Peter J. Hutchinson, St. Maries, for respondent.

W. JONES, Justice.

Appellant, Andrew Navarro (Navarro), directly appeals the decision of the Magistrate Judge granting legal and physical custody of the parties' minor child, Jessica Morgan Navarro-Yonkers (Jessica), to Respondent, Laura Yonkers (Yonkers).

Navarro and Yonkers met in September 2001 and began residing together at the end of 2001. They moved from Carson City, Nevada to St. Maries, Idaho near the end of 2001. Navarro and Yonkers never married. Jessica was born November 25, 2002. There is conflicting testimony whether a pregnancy and miscarriage occurred prior to Jessica's birth due to alcohol abuse by Yonkers.

Yonkers has four children including Jessica. Two of her children, Brandon and Justin, are subject to a 1999 guardianship order, granting custody to Yonkers' parents, Katherine and Doug Yonkers. A third child, Rachel, resides with Yonkers and Jessica. Navarro has two children including Jessica. Navarro's other child is the result of his first marriage. Navarro's other child resides with his wife in Oklahoma. Navarro and his wife have been separated for awhile, but have never formally divorced.

Both parties were arrested in November of 2003 for methamphetamine use. There is conflicting testimony by both parties regarding the nature and extent of the other's drug use. Alcohol is Yonkers' drug of choice and methamphetamine is Navarro's. Jessica and Rachel were placed in temporary custody of the Department of Health and Welfare. Navarro and Yonkers entered the drug court program following the arrest. Yonkers was involuntarily removed from the program in August 2004 when she moved from Idaho to Nevada without permission. Navarro was removed a week later when Carlis Hanlan (an acquaintance of Yonkers) informed police of methamphetamine production equipment on the Navarro–Yonkers premises.

Yonkers permanently took Jessica to Nevada in August 2004. Yonkers failed to inform Navarro of the move or the intent to move Jessica to Nevada. In Nevada, Yonkers filed a temporary restraining order against Navarro for alleged physical abuse. Navarro, in his brief, states that the evidence used in the restraining order was "weak," but does not allege that it was false. Navarro filed a custody petition in Idaho the day after Yonkers and Jessica left. In January 2005, Navarro moved to Hawaii.

The parties stipulated to an interim custody order in December 2004. A temporary custody order was issued on July 12, 2005 following a hearing awarding legal and physical custody of Jessica to Yonkers. Navarro was awarded joint custody for 14 days of each month, the exchange to occur at the Reno–Tahoe airport, with Navarro paying

transportation costs to Hawaii. The final child custody decree, and subject of this appeal, was entered March 31, 2006.

The following issues are presented to this court on appeal:

1. Whether Yonkers is estopped from asserting her fitness as a parent when a Nevada guardianship order affects Yonkers' rights regarding two other minor children

    a. Whether the court erred in refusing to admit into evidence a certified copy of the Nevada guardianship order as Plaintiff's [Navarro's] exhibit 2.

2. Whether the court erred in denying Navarro's motion for a psychological evaluation of the parties.

3. Whether the court erred in refusing to admit into evidence a tape of Yonkers' testimony from a previous hearing.

4. Whether the court erred by treating Yonkers' unilateral move from Idaho to Nevada as a factor in the physical custody award rather than a determinative condition

    a. Whether the court's treatment of Yonkers' move to Nevada was against prior precedent as stated in *Hopper v. Hopper*, 144 Idaho 624, 167 P.3d 761 (2007).

5. Whether there is sufficient evidence to support the court's award of primary physical custody to Yonkers.

■ The Magistrate court's findings of fact will be upheld if supported by substantial and competent evidence. *Leavitt v. Leavitt*, 142 Idaho 664, 668, 132 P.3d 421, 425 (2006) citing *Roe Family Services v. Doe*, 139 Idaho 930, 934, 88 P.3d 749, 753 (2004). "With regard to child custody determinations, these are committed to the sound discretion of the magistrate court and will not be overturned on appeal unless such discretion is abused." *Biggers v. Biggers*, 103 Idaho 550, 555, 650 P.2d 692, 697 (1982). The trial court's decision will not be overturned absent an abuse of discretion. *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003). An abuse of discretion does not exist if the trial court (1) recognizes the issue as one of discretion, (2) acts within the limits of discretion and consistently with the legal standards that apply, and (3) reaches the conclusion through an exercise of reason. *Roberts*, 138 Idaho at 403, 64 P.3d at 329 citing *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). This Court will freely review a lower court's conclusions of law. *Leavitt*, 142 Idaho at 668, 132 P.3d at 425 citing *Roe Family Services*, 139 Idaho at 934, 88 P.3d at 753.

**Yonkers is not estopped from arguing her fitness as a parent regardless of a Nevada guardianship order affecting her rights in two other minor children.**

■ *Res judicata* and collateral estoppel are questions of law, which this Court will freely review. *Lohman v. Flynn*, 139 Idaho 312, 320, 78 P.3d 379, 387 (2003). "*Res judicata* is comprised of claim preclusion (true *res judicata* ) and issue preclusion (collateral estoppel). Under the principles of claim preclusion, a valid final judgment rendered on the merits ... is an absolute bar to a subsequent action between the same parties upon the same claim." *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002).

■ Collateral estoppel, or issue preclusion, may be applied to prior judgments, estopping a person from arguing a finding or verdict that has already been rendered. *Anderson v. City of Pocatello*, 112 Idaho 176, 183, 731 P.2d 171, 177 (1986). The test of when collateral estoppel should apply is (1) whether the party had a full and fair opportunity to litigate the issue, (2) whether the issue decided in the previous litigation is identical to the current issue presented, (3) whether the issue was actually decided in the previous litigation and whether the issue was necessary to the prior judgment, (4) whether the final judgment was on the merits and (5) whether the party who the judgment is asserted against was a party or in privity with the party to the prior judgment. *Anderson*, 112 Idaho at 183–184, 731 P.2d at 177–179 (citations omitted).

■ In the present case, a stipulated guardianship order from 1999 exists for two of Yonkers' children. As to those two children, Yonkers has stipulated that she is an unfit parent. The Nevada guardianship or-

der is temporary according to Nevada statute, and may be revoked at any time. N.R.S. § 159.1905. Navarro was not a party to the guardianship order and the order does not address Yonkers' fitness as a parent as it relates to Jessica. Therefore, *res judicata* does not apply because Navarro was not a party to the first action and the first action did not address Yonkers' ability to parent Jessica. By definition, *res judicata* only applies to "subsequent action between the same parties upon the same claim." *Hindmarsh,* 138 Idaho at 94, 57 P.3d at 805. Additionally, collateral estoppel does not apply because the Nevada guardianship addresses a different issue. Specifically, the Nevada guardianship addresses the issue of Yonkers' fitness to parent Brandon and Justin, whereas, the issue in the present case is Yonkers' fitness to parent Jessica.

■■■ Under I.C. § 32–11–303(a), a valid guardianship order from another jurisdiction is applicable in this jurisdiction as it relates to the children listed in the guardianship order. However, the court is not bound to apply the findings in the guardianship order to other children. The magistrate judge correctly recognized the Nevada guardianship order and considered the order when evaluating "[t]he character and circumstances of all individuals involved". I.C. § 32–717(e). A trial court may consider a guardianship order relating to children that are not part of the custody dispute, but the lower court is not bound by the findings as it relates to the disputed child under the doctrines of *res judicata* and collateral estoppel. A guardianship order from another jurisdiction, when it applies to different children and a different timeframe, is merely another factor to consider when determining parental fitness.

**Jain does not apply to this case because Jessica was not a child in issue to the previous guardianship order.**

■■■ "A court of this state [Idaho] shall recognize and enforce a child custody determination of a court of another state ..." I.C. § 32–11–303(a). A child custody determination places the burden on the parent to show that conditions have changed. *Jain v. Priest,* 30 Idaho 273, 274, 164 P. 364, 366 (1917).

■■ In *Jain,* the court found that a determination of unfitness as a parent shifted the burden to the parent to show that the circumstances had changed. *Jain,* 30 Idaho at 274, 164 P. at 366. In that case, the parents petitioned the court to revoke a finding of parental unfitness after both of the children had been removed from the home. *Id.* at 273, 164 P. at 365. In Nevada, a guardianship for more than one child may be severed and removed as it relates to only one of the children. N.R.S. § 159–057. Therefore, a parent may be fit to parent one child, but unfit to parent a second. Here, the burden never shifted to Yonkers because there was no child custody determination relating to Jessica.

**The court did not commit reversible error in refusing to admit the guardianship order.**

During trial, Navarro also attempted to submit a certified copy of the guardianship order into evidence. Yonkers' objected on the grounds of hearsay and the witness was not the custodian of the document. The court sustained the objection.

■■ Idaho Rules of Evidence allow for the admission of public records as an exception to the hearsay rule. I.R.E. 803(8). The Nevada guardianship order, as a certified copy of a public record, falls within this exception and should have been admitted.

■■ The following documents and testimony were, however, admitted into evidence regarding the guardianship order; (1) petition for appointment of temporary and permanent co-guardians, (2) stipulation and consent to appointment of co-guardians, (3) consent to guardianship, and (4) Yonkers' testimony that two of her children were subject to a guardianship order. The document refused was the order granting petition for guardianship and for issuance of letters of guardianship.

The court did not commit reversible error in refusing to admit the order for guardianship. The order was cumulative, as stated by Navarro in his brief, and provided no additional evidence of the guardianship. Any

error committed by failing to admit the guardianship order was harmless.

**The court did not err by denying Navarro's motion to order psychological testing of the parties.**

The court *may* order a party to submit to mental or physical examination when the mental or physical condition of the party is in controversy. I.R.C.P. 35(a). The decision to order psychological testing is within the discretion of the trial court. A trial court acts within its discretion when it (1) recognizes the decision as one of discretion, (2) acts within the outer limits of that discretion and (3) reaches its conclusion through an exercise of reason. *Roberts*, 138 Idaho at 403, 64 P.3d at 329 citing *Sun Valley Shopping Ctr.*, 119 Idaho at 94, 803 P.2d at 1000.

In the present case, the court reserved ruling on the motion at the July 12, 2005 hearing and ordered that the parties submit medical records for *in camera* review. After reviewing the parties' mental and physical health records, the court concluded that an order for psychological testing was unnecessary. Both parties submitted substantial records of recent medical and mental health histories. The magistrate judge did not abuse his discretion. He recognized his ability to make the decision, and after reviewing the substantial medical records of each party, determined that there were sufficient records of each party's mental state before the court.

**The court did not commit reversible error by refusing admission of the tape of Yonkers' previous testimony into evidence.**

The Idaho Rules of Evidence allow for the admission of official transcripts into evidence, as long as the transcript is an official transcript as defined in Rule 27(d) of the Idaho Court Administrative Rules. I.R.E. 1005(b). An official transcript is the court reporter's transcript. I.C.A.R. 27(d). If the court reporter has not made a transcript, then a transcript prepared from tape of the proceeding is the transcript as long as it was prepared by the court reporter. I.C.A.R. 27(d).

During trial, Navarro's counsel alleged an inconsistency in Yonkers' testimony.

At the July 12 hearing Yonkers stated "... my girlfriend has her [Jessica] in Portland right now because she drove up here to visit, and she's taking—driving them back. And I could ask her to drive her back here [Idaho]." At the November hearing Yonkers stated that her girlfriend took Jessica a few days before the July hearing to Nevada, rather than Portland. The magistrate judge denied Navarro's motion to submit a tape of the July 12 hearing into evidence, but took judicial notice of the hearing "to the extent that I [magistrate judge] recall what occurred."

A judge may take judicial notice of personal recollection of prior proceedings to the extent that the judge recalls what occurred. *State v. Nunez*, 138 Idaho 636, 643, 67 P.3d 831, 838 (2003). However, the previous hearing must be transcribed so that any alleged error in such judicial notice is subject to appellate review. *Matthews v. State*, 122 Idaho 801, 808, 839 P.2d 1215, 1222 (1992). Because this Court was provided with a transcript of the July 12 hearing, judicial notice of the magistrate judge's personal recollection of the testimony was proper.

The judge committed harmless error when he failed to admit the tape of the July 12 hearing. The tape is not admissible as an official transcript under I.R.E 1005(b). However, the tape is admissible to impeach Yonkers as a witness under I.R.E. 607. This error is harmless under I.R.C.P. 61 because failure to impeach is not inconsistent with substantial justice and does not affect a substantial right of the party.

**The Court did not err in the treatment of Yonkers' unilateral departure from Idaho.**

Navarro argues that Yonkers' unilateral move to Nevada violated his rights as stated by this Court in *Hopper v. Hopper*, 144 Idaho 624, 167 P.3d 761 (2007).

In *Hopper*, the mother absconded with the child to Montana and filed for divorce obtaining a domestic violence protection order. *Hopper*, 144 Idaho at 625, 167 P.3d at 762. The father filed for divorce in Idaho and the cases were consolidated, with the Montana action being dismissed. *Id.* The lower court

awarded legal custody to the mother based on testimony that the child's bond with the mother was greater. *Id.* at 626, 167 P.3d at 763. This Court found that the father's rights were prejudiced by the mother's move and unfounded domestic violence order and that "[g]lossing over these facts and going to the end result that the mother has a greater relationship with the child than the father creates an untenable condition." *Id.* at 627, 167 P.3d at 764. This Court then ordered that the child be returned to Idaho so that the father may attempt a relationship with the child during the course of the proceedings. *Id.* The lower court's decision was vacated and remanded. *Id.*

*Hopper* mirrors this case only in the sense that the mother left the jurisdiction with the child. However, in the present case, Navarro was able to maintain a relationship with Jessica throughout the course of the proceedings. In *Hopper*, the father had trouble locating the child and fought vigorously throughout the proceedings to have the child returned to the jurisdiction. Here, an interim custody order was entered by stipulation in December 2004 and a temporary custody order was entered July 2005. Navarro had visitation with Jessica under the December 2004 order and visitation under the July 2005 order. Throughout the course of the proceedings the lower court was able to hear testimony regarding Navarro's relationship with Jessica. Navarro's equal rights to Jessica were not prejudiced by Yonkers' move to Nevada. Although, in no way does this Court condone Yonkers' behavior, it cannot be claimed that the lower court failed to provide Navarro an opportunity to establish a relationship with Jessica. The lower court fully took into account Yonkers' move to Nevada and did not abuse its discretion in the weight the move was assigned.

*Hopper* was not a "move-away" case, as argued by Navarro. A "move-away" case exists when a parent leaves the jurisdiction with the child subsequent to the commencement of child custody proceedings. Here, as in *Hopper*, the child and parent had left the jurisdiction prior to the commencement of proceedings. Neither *Hopper*, nor this case is a true "move-away" case.

The lower court did not err in treating Yonkers' unilateral move to Nevada as a factor rather than a determinative condition in the child custody determination. A unilateral move may relate to the child's best interest; however, prior cases suggest that the court must elaborate how the move relates. Although, a lower court must address a unilateral move in its findings, it is not required to grant custody based purely on that move.

**The evidence is sufficient to support the verdict**

A judge shall consider all relevant factors when making a child custody determination. I.C. § 32–717(1). Child custody determinations are made in the best interest of the child. I.C. § 32–717(1). Relevant factors may include:

(a) [t]he wishes of the child's parent or parents as to his or her custody; (b) [t]he wishes of the child as to his or her custodian; (c) [t]he interaction and interrelationship of the child with his or her parent or parents, and his or her siblings; (d) [t]he child's adjustment to his or her home, school and community; (e) [t]he character and circumstances of all individuals involved; (f) [t]he need to promote continuity and stability in the life of the child; and (g) [d]omestic violence as defined in section 39–6303, Idaho Code, whether or not in the presence of the child.

I.C. § 32–717(1).

"Appellate courts . . . are not permitted to substitute their own view of the evidence for that of the trial court, nor to make credibility determinations." *Pieper*, 125 Idaho at 669, 873 P.2d at 923 citing *Brammer v. Brammer*, 93 Idaho 671, 674, 471 P.2d 58, 61 (1970).

In making the decision in the present case, the magistrate judge heard testimony that; (a) both parents desired legal custody of the child; (b) Jessica was too young to make her wishes known as to which parent she desires as her custodian; (c) Jessica interacts with Yonkers' other children and relates to both her mother (Yonkers) and her father (Navarro); (d) Jessica is involved in numerous activities in Carson City, Nevada and that Nevada has a strong family support system for Jessica; (e) Yonkers has a guard-

ianship order for two of her other kids, but continues to maintain a relationship, while Navarro has failed to maintain a stable relationship with his previous child; (f)Yonkers unilaterally moved to Nevada without Navarro's knowledge; (g) Jessica has adapted to life in Carson City and her pre-school program and interacts with her brothers, sisters and grandparents; and (h) all the evidence presented regarding domestic violence was "weak," but Navarro is the controlling personality in the relationship.

The Magistrate Judge, in his findings, noted that:

> [b]oth [Yonkers and Navarro] have engaged in conduct toward each other attempting to interfere with and frustrate the other party's efforts to parent Jessica. [Yonkers] has had a history of substance abuse and mental health issues that do not cast a favorable light on her ability to parent. She has also had four children, all by different fathers ... Andrew has had little contact with [his other child]. The court is also concerned about Andrew's history of substance abuse and mental health issues. On a more positive note, at the time of trial and for the few months prior to the trial, both parties seem to have matured. Both appeared at trial seemingly drug free with current family support systems in place.

From the testimony and the court's findings, it is clear, that neither party substantially excels above the other as a parent. The Magistrate Judge made his determination of custody based on substantial evidence. The Magistrate Judge did not abuse his discretion and the decision below is affirmed. Costs awarded to Respondent Yonkers.

Justices BURDICK, J. JONES and HORTON, concur.

Chief Justice EISMANN, specially concurring.

I concur in the majority opinion, but write only to further discuss the applicability of *Hopper v. Hopper*, 144 Idaho 624, 167 P.3d 761 (2007), to this case.

"The welfare and best interest of the child is of paramount importance when awarding custody." *Gustaves v. Gustaves*, 138 Idaho 64, 68, 57 P.3d 775, 779 (2002); I.C. § 32–717(1). Except in cases where one parent is a habitual perpetrator of domestic violence, there is a presumption that it is in the best interests of a child to have frequent and continuing contact with both parents. I.C. § 32–717B(1), (4), & (5). Therefore, it is presumed that it is not in the child's best interests to permit one parent to unilaterally remove a child from the community where the parents and child resided when such move prevents the other parent from having frequent and continuing contact with the child.

In *Hopper*, the mother unilaterally removed the child from Boise, Idaho, where the parties had resided with their child, to Montana. Her conduct prevented the father from having frequent and continuing contact with their child, and was presumptively not in the child's best interests. Therefore, we held, "The mother should have been ordered to return the child to Idaho where the father might exercise his rights as an equal parent and have this case decided with the underlying legal and social principle that it is the best interests of a child to have a continuing relationship with both parents." 144 Idaho at 627, 167 P.3d at 764.

In the instant case, Navarro stipulated that Yonkers could have physical custody of the child in Nevada while this case was pending. He then moved to Hawaii. Ordering the child returned to Idaho would not have increased Navarro's ability to have frequent and continuing contact with the child. Although the magistrate judge must ensure that Navarro had the opportunity to have frequent and continuing contact with his child, it was Navarro's responsibility to take advantage of that opportunity.